Stroup, et al. *v.* McNair.

Argued March 8, 1972, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer and Rogers. Judge Blatt disqualified herself and did not participate.

*Bruce E. Cooper,* with him *Cooper, Friedman & Friedman,* for plaintiffs.

*Harold E. Kohn,* Special Attorney, with him *Barry A. Roth,* Deputy Attorney General, *Lawrence J. Beaser,* Assistant Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for defendant.

OPINION BY JUDGE WILKINSON, April 27, 1972:

This is an action in Quo Warranto brought by three members of the Senate of the Commonwealth of Pennsylvania to test the right of defendant to serve as a Member of the State Tax Equalization Board of Pennsylvania. The case is before us on Complaint filed and Preliminary Objections.[1]

The first ground for preliminary objection is that the Plaintiffs do not have standing to bring Quo Warranto. Defendant relies on the line of cases that asserts that only the Attorney General, the District Attorney, or a person with a special interest as distinguished from the interest of the public generally can bring Quo Warranto. *See Mayer v. Hemphill,* 411 Pa. 1, 190 A. 2d 444 (1963). In dismissing this preliminary objection, we have no quarrel with these cases. We simply find that a member of the Senate, when he asserts that individuals are purporting to hold public office which he alleges requires Senate approval, and he has not been given the opportunity to express his

---

[1] The defendants had raised the question of the sufficiency of the service, but this objection was withdrawn at oral argument in an effort to expedite the disposition of the cases.

approval or disapproval as a member of that body, has a special interest within the meaning of these cases.

The third and fourth paragraphs of the Preliminary Objections demur to the allegations of the complaint that the defendant's appointment required the consent of two-thirds of the Senate. This requirement is alleged to be contained in Article IV, Section 8(a), of the Pennsylvania Constitution which provides as follows: "(a) The Governor shall appoint an Attorney General, a Superintendent of Public Instruction and such other officers as he shall be authorized by law to appoint. The appointment of the Attorney General, the Superintendent of Public Instruction and of such other officers as may be specified by law, shall be subject to the consent of two-thirds of the members elected to the Senate." The defendant relies on subparagraph (b) of the same Section which provides: "(b) Except as may now or hereafter be otherwise provided in this Constitution as to appellate and other judges, he may, during the recess of the Senate, fill vacancies happening in offices to which he appoints by granting commissions expiring at the end of its session and fill vacancies happening in the office of Auditor General or State Treasurer or in any other elective office he is authorized to fill. If the vacancy happens during the session of the Senate except as otherwise provided in this Constitution, he shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy."

Defendant contends that the appointment was made during the recess of the Senate, and the vacancy "happened" during the recess. We must sustain defendant's contention.

The defendant asserts that the Senate was in recess when the appointment was made on December 29, 1971. This argument is based on the wording of the Adjournment Resolution of the Senate which read: "RESOLVED,

(the House of Representatives concurring), That this 155th Regular Session adjourn Sine Die on this twenty-eighth day of December, 1971, at 10:00 o'clock, P.M." This resolution was adopted by the Senate at 9:15 p.m., and was promptly transmitted to the House of Representatives. The House of Representatives concurred at 10:45 p.m. We hold this to be a valid concurrence. We are not here involved with the enrolled bill doctrine or "turning back the clock." The Senate resolution did not make time of the essence. We hold that the adjournment of the House of Representatives at 10:45 p.m. was a concurrence in the Senate Adjournment Resolution as passed by the Senate. Obviously, we would have an entirely different question presented to us if the Senate, after 10:00 p.m., had acted to withdraw or recall the resolution, or if it had expressly made the Resolution of Adjournment conditioned on the concurrence being affirmatively voted by the House of Representatives prior to 10:00 p.m.

The vacancy originally "happened" on November 14, 1971, while the Senate was in session. Plaintiffs contend that this prevented the filling of the vacancy during a subsequent recess of the Senate. Whatever validity that argument may have had originally has long since been discarded by the Supreme Court in *Commonwealth ex rel. Lafean v. Snyder*, 261 Pa. 57, 104 A. 494 (1918), and that position reconfirmed in *Ritenour v. Peirce*, 442 Pa. 1, 272 A. 2d 900 (1971). The Supreme Court was evenly divided on the recess appointment of judges when the vacancy "occurs" during a Senate session as set forth in Article V, Section 13(b). It was the change in the wording from "happening," as in Article IV, Section 8(b), to "occurs" in Article V, Section 13(b), which caused the division. *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A. 2d 57 (1971). It is apparent to us, in view of the language in the very recent decisions in *Ritenour, supra,*

and *Twelve Common Pleas Judges, supra,* that the Supreme Court continues to maintain the position that the vacancy with regard to nonjudicial appointments continues to "happen" each day and that, therefore, the Governor was authorized to fill these vacancies under Article IV, Section 8.

The fifth paragraph of the Preliminary Objections demurs to the allegations of the complaint that the term of the appointee expired at 12:00 noon on January 4, 1972. The complaint bases this allegation on the plaintiffs' interpretation of the provision of Article IV, Section 8, reading: ". . . commissions expiring at the end of its session. . . ." Plaintiffs argue that this appointment was made, at best, during the recessed 155th session of the Senate and, under this provision, would end at the end of the 155th session at noon on January 4, 1972. Support is found for this argument in the fact that the corresponding provision of the former Constitution provided: ". . . commissions which would expire at the end of the *next* session. . . ." (Emphasis supplied) Plaintiffs would have us interpret the deletion of the word "next" as equivalent to inserting the words "current" or "recessed" session. We cannot adopt this argument and must sustain defendant's demurrer on this point.

Once we have concluded, as we have, that the Governor can make recess appointments under these circumstances, then we must decide that such authority was to be meaningful and not limited to appointments to terminate in a matter of days or weeks as such recess appointments would normally do under plaintiffs' position. To impel us to adopt such an untenable position would require the affirmative insertion of such words as "current" or "recessed." It may very well be that such was the intention of the people when they adopted the new Constitution, so as to avoid what the plaintiffs assert is the circumvention of the constitu-

tional restraint on gubernatorial appointments. If so, it should have been more clearly expressed by the insertion of language rather than so subtly expressed by the deletion of one word.

In view of our decision that confirmation by the Senate was not required in this case, it is unnecessary to consider the proposition advanced by the defendant that Article IV, Section 8, of the Pennsylvania Constitution, in requiring a two-thirds vote of the Senate for confirmation, violates the "One man-One vote" rule of the Federal Constitution.

The Preliminary Objections of the defendant are sustained and the plaintiffs' Complaint dismissed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The term of Ruth Pennell, a full term member of the State Tax Equalization Board of Pennsylvania, expired November 14, 1971, when the Senate of Pennsylvania was in session before final adjournment. The Senate of Pennsylvania adjourned *sine die* on December 28, 1971. The Governor of the Commonwealth did not nominate to the Senate any person to fill the vacancy resulting from the expiration of Ruth Pennell's term. On December 29, 1971, the Governor of the Commonwealth appointed the defendant, Earl P. McNair, to a recess appointment as a member of the State Tax Equalization Board of Pennsylvania.

The majority today approves this appointment, even though the relevant part of Article IV, Section 8, of the Constitution of Pennsylvania provides as follows: "If the vacancy happens during the session of the Senate except as otherwise provided in this Constitution, he [Governor] shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy."

Three cases are cited by the majority for its conclusion that the appointment here was proper. *Commonwealth ex rel. Lafean v. Snyder,* 261 Pa. 57, 104 A. 494 (1918), and *Ritenour v. Peirce,* 442 Pa. 1, 272 A. 2d 900 (1971), were both cases where the Governor, *contrary to the facts of the instant case,* had nominated a person to the Senate prior to its adjournment and the Senate had either failed to act on the nomination or had rejected the nomination prior to adjournment and then following adjournment the Governor appointed the same person as a recess appointment. Here the Governor failed to nominate any person to the Senate following the happening of the vacancy and prior to the adjournment of the Senate.

Further, *Commonwealth ex rel. Lafean v. Snyder, supra,* was decided *solely* on the question of the right of the Governor to appoint one to fill a vacancy whom the Senate had rejected for appointment for the regular term. The threshold question of *when* the vacancy had happened was not in contention in *Lafean.* The Court in that case, at page 62 of 261 Pa., stated: "Appellants do not contend that the vacancy in question was one that had not 'happened' during the recess of the senate, though it in fact arose while the senate was in session, but base their argument squarely on the contention that the governor could not fill the vacancy, however or whenever arising, by appointing one whom the senate had previously rejected for that office."

Likewise, in *Ritenour v. Peirce, supra,* the Governor nominated a person to the Senate and it failed to act before it adjourned. In February, 1970, Governor Shafer nominated Mr. Peirce to be Clerk of Courts of Allegheny County and submitted his name to the Senate for confirmation. The Senate took no action on the nomination and, on November 19, 1970, adjourned. On December 1, 1970, during the Senate adjournment,

the Governor appointed Peirce as Clerk of Courts of Allegheny County and issued his commission as such.

I submit that *Commonwealth ex rel. Lafean v. Snyder, supra,* and *Ritenour v. Peirce, supra,* support only the proposition that, *if* the Governor has nominated a person to fill a vacancy which happens during the session of the Senate and the Senate either (1) rejects the nomination or (2) fails to act upon the nomination, the Governor is not foreclosed from appointing during the adjournment of the Senate.

Mr. Justice POMEROY, in *Ritenour v. Peirce,' supra,* at page 10 of 442 Pa., aptly summarized the holding in that case in this way: "The Governor did nominate a person to fill the Barrett vacancy before the Senate's adjournment; the Senate took no action in the following nine months prior to its adjournment; during the ensuing recess of the Senate the Governor made the appointment. In so doing he did all that he was required to do under Article IV, Section 8, and there is no indication in the Constitution that nonaction by the Senate while it is in session operates to foreclose the Governor from exercising the right, granted by the same constitutional section, to appoint during the recess of the Senate. Cf. Commonwealth ex rel. Lafean v. Snyder, 261 Pa. 57, 104 Atl. 494 (1918)."

The heart of the matter is, as Mr. Justice POMEROY expressed it, that when the Governor nominated to the Senate "he did all that he was required to do under Article IV, Section 8 . . . ." Here the Governor did not nominate to the Senate but waited for its adjournment and then the next day made a recess appointment. Here the Governor did not do "all that he was required to do under Article IV, Section 8" of the Constitution. To me, these two cases, *Lafean* and *Ritenour,* not only can be distinguished in a very important aspect, but their holdings are not entirely relevant to the question now before us. We must here decide the ques-

tion of whether the Governor under the provisions of Article IV, Section 8, can await the adjournment of the Senate and then the next day make a recess appointment for a vacancy which happened during the session of the Senate. These two cases do not address themselves to this question.

The third case cited by the majority to support the appointment was *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A. 2d 57 (1971). This case involved an interpretation of Article V (the Judiciary Article), Section 13 (a) and (b), of the Pennsylvania Constitution of 1968. Here we are concerned with an interpretation of Article IV, Section 8, which specifically provides for the appointment by the Governor to offices other than judicial offices. In addition, Article IV, Section 8, by its own terms, distinguishes between a recess and a session of the Senate. Furthermore, this case was decided by an equally divided court with three justices concluding that judicial appointments made by the Governor to positions where a vacancy occurred during a session of the Senate, without submitting the nominees to the Senate for its advice and consent, were invalid.

The requirement of senatorial consent is not a new concept in Pennsylvania constitutional history. The purpose of this requirement is admittedly to diminish and restrict the Governor's powers of appointment. The right of consent serves as a safeguard against ill-considered and mediocre appointments by the Governor. Desirable or not, the duty to submit to the Senate, when not in recess, the names of prospective nominees was the means fashioned by the writers of the Constitution to remove the cloak of secrecy surrounding gubernatorial appointments.

I read Article IV, Section 8, to place on the Governor the mandatory duty to submit names to the Senate if the vacancy happens during the session of the

Senate. The words, "he *shall* nominate to the Senate," are to me plain and unequivocal. "Shall" is not a word of discretion. To conclude that "shall" is a discretionary word in this context would require the mental addition of the words, "unless the Governor decides otherwise."

Article IV, Section 8, provides that the Governor *may* fill vacancies during the recess of the Senate and, in the next sentence, that the Governor *shall* submit names to the Senate for vacancies happening during the session. I believe it is a fair and sound inference that the people in adopting the Constitution realized the difference between mandatory "shall" and discretionary "may" and intended for them to have their ordinary meanings.

I can only conclude that the Governor's failure here to comply with his mandatory duty under Article IV, Section 8, to nominate a proper person to the Senate to fill the vacancy created by the expiration of the term of Ruth Pennell on November 14, 1971 when the Senate was in session renders his subsequent appointment of Earl P. McNair invalid. To hold otherwise would allow the Governor to qualify for a right through the violation of a duty. I would therefore dismiss defendant's preliminary objections and afford him an opportunity to file an answer to plaintiffs' complaint.

In addition, I would note that it is my view that, even if the appointment of Earl P. McNair was constitutionally proper, it would have expired at the end of the recessed session of the Senate during which it was made by the Governor. Under the facts here, that expiration date would have been January 4, 1972. My reasons for reaching this conclusion are stated and discussed in my dissenting opinion filed this day in *Stroup v. Schonek,* 5 Pa. Commonwealth Ct. 257, A. 2d (1972).