Middle Paxton Township, Appellant, *v.* Borough of Dauphin, Appellee.
Derry Township Supervisors, Appellant, *v.* Borough of Hummelstown, Appellee.
Derry Township Supervisors, Appellant, *v.* Borough of Hummelstown, Appellee.

Argued May 8, 1973, before President Judge Bow-man and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Kent H. Patterson,* with him *William Fearen* and *Cleckner & Fearen,* for appellants, Derry Township Supervisors.

*Charles E. Sweigard, Jr.,* for appellant, Middle Paxton Township.

*Herbert A. Schaffner,* with him *Reynolds, Bihl and Schaffner,* for appellee, Borough of Hummelstown.

*David B. Disney,* with him *McNees, Wallace & Nurick,* for appellee, Borough of Dauphin.

OPINION BY PRESIDENT JUDGE BOWMAN, July 20, 1973:

These are three consolidated appeals from orders of the Court of Common Pleas of Dauphin County dismissing complaints challenging annexation ordinances of the Borough of Dauphin and the Borough of Hummelstown.

The factual background of the first appeal is as follows: on February 22, 1972, acting upon a petition of freeholders of the territory to be annexed the Council of the Borough of Dauphin enacted Ordinance No. 72-1, annexing to the Borough 62.79 acres of land situate in Middle Paxton Township. Pursuant to Section 427 of the Borough Code, Act of February 1, 1966, P. L. (1965) 1656, 53 P.S. §45427, the next day an annexation certificate was filed in the Court of Common Pleas of Dauphin County thereby completing the annexation. The Supervisors of Middle Paxton Township, in their official and individual capacities, then filed a complaint challenging the annexation ordinance and requesting relief as provided by Sections 1 and 3 of the Act of July 20, 1953, P. L. 550, 53 P.S. §§67501, 67503, pertaining to Townships of the Second Class. To the complaint the Borough of Dauphin filed preliminary objections, which included a demurrer and also raised the matter of the court's jurisdiction over the subject matter. The Court of Common Pleas of Dauphin County dismissed the Township's complaint.

The second two appeals originate in two ordinances similarly adopted by the Borough of Hummelstown. On October 19, 1971, and December 21, 1971, the Borough

enacted ordinances numbered 8 and 13 annexing 53.53 and 3½ acres respectively of land situate in Derry Township, Dauphin County. Both annexations were effected pursuant to the Borough Code; the complaints filed by the Township Supervisors, in their official and individual capacities, challenging the respective annexation ordinances sought relief as provided in the Borough Code. After an answer and stipulation of counsel were filed, the lower court also dismissed these complaints.

Besides the issue of improper annexation procedure, the Middle Paxton Township complaint alleges that the annexation was defective since the electors of the municipalities involved were not given the right of initiative and referendum as is mandatory, the Township argues, under Article IX, Section 8, of the 1968 Constitution of Pennsylvania. No statutory questions are raised in the Derry Township complaints, but similar constitutional issues are presented, i.e., that the annexation ordinances violated Article IX, Section 8, by not having provided for an initiative and referendum. The complainants argue that the Legislature's failure to enact uniform annexation statutes by April 23, 1970, left the initiative and referendum as the only procedure for changing boundaries.

Recent case law adequately resolves the statutory issue in the Middle Paxton Township complaint. It is now clear that when an annexation is commenced under one statute, the annexation must be completed via the procedures of that statute. Separate statutes in matters of annexation *procedure* are not to be read in pari materia. "Each represents a separate and distinct procedure for annexing territory, and there is no basis for commingling their provisions." *Jenner Township Annexation Case,* 423 Pa. 609, 613, 225 A. 2d 247, 249 (1967). This view as to annexation procedure was clarified in *Millersville Annexation Case; Lancaster*

*Township Appeal,* 447 Pa. 310, 290 A. 2d 102 (1972). The Court said that *Jenner* was "limited to a decision that this court should refuse to attempt to consolidate the *procedures* set forth in the two statutes into a single annexation *procedure.*" 447 Pa. at 318, 290 A. 2d at 105 [Emphasis in original.] In *Millersville,* there was a substantive variance between the Borough Code and the Second Class Township Code with regard to how many freehold interests a tenancy by the entireties comprised. The Supreme Court concluded that in such *substantive* matters, the two statutes were to be read in pari materia. This was the essence of our opinion in *Norwegian Township v. Minersville,* 5 Pa. Commonwealth Ct. 296, 290 A. 2d 273 (1972).

The constitutional issues are less easily resolved. Section 8 of Article IX of the 1968 Constitution of Pennsylvania now provides:

"Uniform Legislation. The General Assembly shall, within two years following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of municipalities.

"Initiative. The electors of any municipality shall have the right, by initiative and referendum, to consolidate, merge and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.

"Study. The General Assembly shall designate an agency of the Commonwealth to study consolidation, merger and boundary changes, advise municipalities on all problems which might be connected therewith, and initiate local referendum.

"Legislative Power. Nothing herein shall prohibit or prevent the General Assembly from providing additional methods for consolidation, merger or change of boundaries." There has been significant controversy concerning the failure of the Legislature to enact such

uniform legislation and the effect thereof on the inconsistent statutes which were to be replaced. We have recently followed the Superior Court's pronouncement that the Borough Code "continued in effect *at least* until the expiration of two years from the adoption of the Article since the General Assembly did not act within that period . . . further, [the expiration of the two-year period] will not affect pending [annexation] proceedings being conducted at that time pursuant to valid statutes. [Citations and footnote omitted.]" *Baldwin Borough Appeal,* 217 Pa. Superior Ct. 346, 350-51, 272 A. 2d 731, 733-34 (1970) [emphasis in original]. *See Norwegian Township v. Minersville, supra; Township of Franklin v. Borough of Delmont,* 2 Pa. Commonwealth Ct. 310, 279 A. 2d 387 (1971), *cert. denied,* 404 U.S. 1038 (1972).

A new problem arises where annexation proceedings are commenced after the constitutionally prescribed period. Complicating this question is the interpretation of the schedule applicable to Article IX:

"SCHEDULE

"This new article and the repeal of existing sections shall take effect on the date of approval by the electorate, except that the following sections shall take effect on the effective date of legislation adopted pursuant to the sections or the date indicated below, whichever shall first occur.

"The first, third and fourth paragraphs of section eight shall take effect two years after the effective date. The second sentence of section one, the fourth sentence of section two, all of section three, the third paragraph of section four, and the first paragraph of section ten shall take effect four years after the effective date. The second sentence of section one and the first paragraph of section eight on Uniform Legislation shall be construed so as to be consistent with the jurisdiction of this Convention." One view is that the Legislature had

until April 23, 1970, to enact uniform legislation. The alternative position is explained in *Baldwin Borough Appeal, supra* at n.1, 272 A. 2d at n.1: "Reading §8 of Article IX, in conjunction with the Schedule of effective dates applicable thereto, we note the possibility that the effective date of paragraph one of §8 is four years rather than the two-year period contended by appellant. In other words, for two years after enactment of the Article, there is no mandate for the General Assembly to act since the Schedule makes the first paragraph effective as of April 23, 1970; but for two years thereafter the General Assembly is under pressure to enact uniform legislation. Such an interpretation is consistent with the fact that paragraph four does not become effective until April 23, 1970. It is also consistent with the four-year grace period given the General Assembly before it must enact uniform legislation under §1 of Article IX." We find that reading the first sentence of paragraph one of Article IX, Section 8, together with the applicable portion of the schedule, supports the interpretation that the Legislature had until April 23, 1970, to enact uniform legislation. The schedule evidences faith in the Legislature's compliance by assuming that the legislation would be enacted within that time period and would subsequently take effect no later than April 23, 1970. The four-year construction is incompatible with the first sentence of the first paragraph of Section 8 which specifically states that "[t]he General Assembly shall, *within two years following the adoption [April 28, 1968] of this article,* enact uniform legislation. . . ."

Given this interpretation, the three annexation proceedings involved herein were initiated subsequent to the prescribed two-year period.[1] *Baldwin Borough Ap-*

---

[1] Counsel for the Borough of Dauphin informed this Court that the 1967 date of enactment of Ordinance No. 72-1 as it appeared in the record was a typographical error.

*peal, supra,* therefore, is not necessarily controlling. Uniform legislation has not been ordained. Was the initiative and referendum the sole procedure for changing boundaries? We hold that it was, that the failure of the Legislature to act abrogated all the preexisting non-uniform legislation. *See In re: Annexation to the City of Greensburg,* 52 West. 251 (1970). This position is founded on "the established general rule that constitutional provisions are to be construed as mandatory unless, by express provision or by necessary implication, a different intention is manifest. Usually, therefore, constitutional provisions are mandatory rather than directory, and there are expressions to the effect that all constitutional provisions are mandatory." 16 C.J.S. *Constitutional Law* §61 (1956), citing numerous cases. In *Cavalcante v. O'Hara,* 47 Dauph. 348, 352, 36 Pa. D. & C. 139, 142 (1939), the court noted the "well settled fundamental principl[e] of law" that "even though the provisions of a statute may be regarded as directory, the provisions of the Constitution are mandatory, and it is dangerous to construe the provisions of the Constitution as directory." In *Tausig v. Lawrence,* 328 Pa. 408, 197 A. 235 (1938), the issue before the Supreme Court concerned a portion of Article XVIII, Section 1, of the Constitution then in effect. The Court said, "No uncertainty or compromise is suggested by the phrase 'and the Secretary of the Commonwealth *shall* cause the same to be published' ["three months before the next general election"]. Any period less than that prescribed by the section will not suffice." 328 Pa. at 413-14, 197 A. at 238. This necessarily defines "shall" as being mandatory rather than directory. *Accord, Commonwealth ex rel. v. Davis,* 299 Pa. 276, 149 A. 176 (1930). In footnote 4 of the opinion, the Court in *Tausig* quoted I Cooley, Constitutional Limitations (8th ed., 1927), 159: "If directions are given respecting the times or modes of proceeding

in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only. . . ." The two-year period in Article IX, Section 8, is the essence of the section and non-procedural in character. *See Armstrong v. King,* 281 Pa. 207, 126 A. 263 (1924); *Commonwealth ex rel. v. Griest,* 196 Pa. 396, 46 A. 505 (1900).

We believe that the language of paragraph one of Article IX, Section 8, of the Constitution of Pennsylvania was a mandate to the Legislature to act within the specified time necessarily abrogating the preexisting legislation sought to be replaced. The Legislature, having thus far failed to act, has thereby caused the initiative and referendum to be the sole remaining procedure for changing boundaries. *See Re: St. Lawrence Borough Charter,* 65 Berks 1 (1972); *Greensburg Annexation, supra.*

Therefore, the orders of the Court of Common Pleas of Dauphin County dismissing the complaints and holding annexation ordinances number 72-1, 1972, of the Borough of Dauphin and numbers 8 and 13, 1971, of the Borough of Hummelstown constitutional are reversed. Said ordinances are hereby declared to be null and void.

