Middle Paxton Township *v.* Borough of Dauphin,
Appellant.
Derry Township Supervisors *v.* Borough of
Hummelstown, Appellant.
Londonderry Township Supervisors *v.* Borough
of Royalton, Appellant.

Argued May 20, 1974. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*David B. Disney,* with him *McNees, Wallace & Nurick,* for appellant, Borough of Dauphin.

*Herbert A. Schaffner,* with him *Reynolds, Bihl and Schaffner,* for appellant, Borough of Hummelstown.

*James B. Pannebaker,* with him *Pannebaker and Yost,* for appellant, Borough of Royalton.

*Jeffrey A. Ernico,* with him *Norman M. Yoffe,* for appellee, Middle Paxton Township.

*Kent H. Patterson,* with him *Cleckner and Fearen,* for appellees, Derry Township Supervisors.

*Christian S. Erb, Jr.,* with him *Metzger, Wickersham, Knauss & Erb,* for appellees, Supervisors and Planning Commission of Londonderry Township.

*J. Scott Calkins, Robert J. Demer* and *Shaffer, Calkins & Balaban,* for amici curiae, Pennsylvania Chamber of Commerce, Pennsylvania Builders Association, Pennsylvania League of Cities, Pennsylvania State Association of Boroughs.

OPINION BY MR. JUSTICE O'BRIEN, October 16, 1974:

Subsequent to April 23, 1970, the Boroughs of Hummelstown, Dauphin and Royalton instituted annexation proceedings against the Townships of Derry, Middle Paxton and Londonderry, respectively. All proceedings were instituted under the provisions of the Borough Code. Each of the townships filed complaints in the Court of Common Pleas of Dauphin County, alleging that the annexation procedures of the Borough Code had been repealed by §8 of Article IX of the Pennsylvania Constitution. The Court of Common Pleas of Dauphin County dismissed each of the townships' complaints, but on appeal, the Commonwealth Court reversed.[1] We granted allocatur in order to resolve the conflict between the ruling of the Commonwealth Court and dicta contained in a footnote in the opinion of the Superior Court in its decision in *Baldwin Borough Appeal,* 217 Pa. Superior Ct. 346, 350, 272 A.2d 731 (1970).

Article IX, §8, of the Constitution, adopted April 23, 1968, reads as follows:

"8. Consolidation, merger or boundary change. *Uniform Legislation.* The General Assembly shall,

---

[1] The cases involving the Boroughs of Hummelstown and Dauphin were combined. In the case involving the Borough of Royalton, the parties stipulated they would be bound by the Commonwealth Court's decision in the other case. .   .

*within two years* following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of municipalities.

*"Initiative.* The electors of any municipality shall have the right, by initiative and referendum, to consolidate, merge and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.

*"Study.* The General Assembly shall designate an agency of the Commonwealth to study consolidation, merger and boundary changes, advise municipalities on all problems which might be connected therewith, and initiate local referendum.

*"Legislative Power.* Nothing herein shall prohibit or prevent the General Assembly from providing additional methods for consolidation, merger or change of boundaries." (Emphasis supplied.)

Section 14 of Article IX contains the following provision with regard to the effective date of §8:

"This new article and the repeal of existing sections shall take effect on the date of approval by the electorate, except that the following sections shall take effect on the effective date of legislation adopted pursuant to the sections or the date indicated below, whichever shall first occur.

"The first, third and fourth paragraphs of section eight shall take effect two years after the effective date. The second sentence of section one, the fourth sentence of section two, all of section three, the third paragraph of section four, and the first paragraph of section ten shall take effect four years after the effective date. The second sentence of section one and the first paragraph of section eight on Uniform Legislation shall be construed so as to be consistent with the jurisdiction of this Convention."

In the footnote in *Baldwin, supra,* the Superior Court indicated that it believed that the Legislature had four years in which to enact the uniform annexation legislation required by Article IX, §8. In expressing this view, we believe that the Superior Court was mistaken. The provision specifically provides that the Legislature is to act "within two years following the adoption of this article." Consistent with that provision, §14 of Article IX provides that the effective date of the article is two years after the date of approval of the Constitutional provision, if that date occurred before the effective date of the legislation enacted by the Legislature. Consequently, there being no such legislative enactment, the amendment became effective two years after April 23, 1968, the date of its approval.

As additional support for our interpretation, we note that where a particular section of Article IX was not to take effect until four years after the effective date of Article IX, the constitutional draftsmen said so specifically.

Since the Legislature did not enact uniform legislation regarding annexation procedures by April 23, 1970, all annexation after that date must be by initiative, as set forth in Article IX, §8.

Order of the Commonwealth Court affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority that article IX, section 8 of the Pennsylvania Constitution establishes a two-year period for the adoption of uniform legislation on the subject of consolidation, merger, and boundary changes of municipalities. However, the majority assumes, without explicitly so deciding, that the failure of the Legislature to act within that period results in the implicit repeal of all legislation regarding annexation procedures which article IX, section 8 directed to be replaced. With this assumption I cannot agree.

I dissent and would reverse the orders of the Commonwealth Court and affirm the orders of the Court of Common Pleas of Dauphin County dismissing the complaints.

In order to affirm, the majority of necessity must have adopted the rationale proferred by the Commonwealth Court. That court, reasoning that the word "shall" in section 8 is mandatory, concluded: "We believe that the language of paragraph one of Article IX, Section 8, of the Constitution of Pennsylvania was a mandate to the Legislature to act within the specified time necessarily abrogating the preexisting legislation sought to be replaced." 10 Pa. Commonwealth Ct. 431, 439, 308 A.2d 208, 211.

In my view, sensitive questions of constitutional interpretation are not to be decided by mechanically classifying a provision as either "mandatory" or "directory" and divining the supposed automatic consequences that flow from that classification.

The mere use of the word "shall" is not a sufficient basis upon which to conclude that the provision is mandatory. The substance of what is directed to be done and by whom must be considered. See *McQuiston's Adoption*, 238 Pa. 304, 86 A. 205 (1913) ;* see also *Butcher v. Bloom*, 415 Pa. 438, 461-65, 203 A.2d 556, 569-71 (1964) ; 2A J. Sutherland, Statutes and Statutory Construction § 57.14, at 435 (C. Sands ed. 1973).

The section in question directs the Legislature to enact uniform laws establishing procedures for consolidation, merger, and boundary changes of municipalities. It thus assigns a project of great magnitude and complexity to a body traditionally vested with wide discre-

---

* " 'Whether a particular statute is mandatory or directory does not depend on its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other.' " 238 Pa. at 308, 86 A. at 206.

tion as to its agenda. Thorough study and reflection, delicate compromises of contending viewpoints, and arduous assembly of political support may all be required. The possible press of more urgent legislative business may have been foreseen as an obstacle to prompt enactment. The passage of legislation is frequently tortuous, unpredictable, and slow. In short, both the magnitude of the project and the vagaries of the legislative process, the first obvious and the second well-known, reveal the folly of mandating the Legislature to act within the specified time period. I will not attribute that folly to the constitutional draftsmen. Instead I conclude that section 8 is one of those "provisions in nearly every constitution which from the very nature of things must be construed to be directory, for example, sections commanding the Legislature to pass laws of a particular character . . . . Such provisions are binding only on the conscience of the legislative body." T. White, Commentaries on the Constitution of Pennsylvania § 14, at 24-25 (1907).

The cases relied on by the Commonwealth Court do not require a different conclusion. *Tausig v. Lawrence,* 328 Pa. 408, 197 A. 235 (1938), involved a constitutional provision establishing procedures for amending the Constitution. Specifically, the section created a ministerial duty in the Secretary of the Commonwealth to publish proposed amendments three months before the next general election. This Court stated in dictum that the failure to literally perform aborted the amendment process. Underlying that statement is a firm belief that strict compliance with the prescribed process was essential to the achievement of the goal. *Commonwealth ex rel. Woods v. Davis,* 299 Pa. 276, 149 A. 176 (1930), held that a provision requiring that all officers "shall be removed [from office] on conviction of misbehavior in office or of any infamous crime" was self-executing.

Today we deal with a far different case. Article IX, section 8 does not prescribe a ministerial duty nor any consequence capable of self-execution. Nor does it prescribe a process for accomplishing some goal the achievement of which requires literal compliance with every step. Rather we have a direction to the Legislature to enact laws during a certain period. Nowhere does it state the consequence of failure to comply. To conclude that failure results in the repeal by inaction of the statutes sought to be replaced, the majority must infer a consequence that the Constitution does not provide.

The logic of the majority and the Commonwealth Court leads to the final conclusion that, because the Legislature failed to enact uniform legislation within the "mandated" period, it is prohibited from ever doing so. Action after the expiration of the two-year period would not be literal compliance with a "mandatory" command. That such an absurd result is the conclusion demonstrates the error of the premise. See Statutory Construction Act, 1 Pa.C.S. § 1922(1) (Special Pamphlet, 1973).

That error would be avoided if we heeded the advice of our great predecessor, Chief Justice GIBSON: "A constitution is not to receive a technical construction, like a common-law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them; and, to that end, its commands as to the time or manner of performing an act are to be considered as merely directory whenever it is not said that the act shall be performed at the time or in the manner prescribed, and no other." *Commonwealth v. Clark*, 7 W. & S. 127, 133 (Pa. 1844).

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this dissenting opinion.