Edward P. Zemprelli, State Senator, Petitioner *v.* Richard L. Thornburgh, Governor, Respondent.

44

Argued September 11, 1979, before President Judge Bowman and Judges Wilkinson, Jr., Rogers, Blatt, DiSalle, Craig and MacPhail. Judges Crumlish, Jr. and Mencer did not participate.

*James H. Cawley,* Chief Counsel to the Majority Caucus, Senate of Pennsylvania, for petitioner.

*David H. Allshouse,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, Chief, Civil Litigation, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, October 29, 1979:

Petitioner, in his capacity as a member of the Senate of Pennsylvania, has addressed this petition to our original jurisdiction, seeking a judicial remedy against the Governor of the Commonwealth of Pennsylvania on the basis of Article IV, §8(b) of the Pennsylvania Constitution, which in part provides:

> (b) The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy and not thereafter. The Senate shall act on each executive nomination within 25 legislative days of its submission. . . . If the Senate for any reason fails to act upon a nomination submitted to it within the required 25 legislative days, the nominee shall take office as if the appointment had been consented to by the Senate. . . .

The quoted terms are a portion of an amendment to the constitution proposed by joint resolution of the

Pennsylvania Senate and House of Representatives and approved by vote of the electorate on May 20, 1975.

The petition avers the expiration of terms of office with respect to state boards and commissions, consisting of the Pennsylvania Turnpike Commission, Pennsylvania Liquor Control Board, Pennsylvania Securities Commission, Pennsylvania Game Commission and the boards of state hospitals and state-owned or state-related colleges. The petition alleges that the Governor, although constitutionally required to submit to the Senate his nominees for those positions, has not done so despite requests to him by petitioner.

Noting that more than 90 days have elapsed since the inauguration of the Governor, the petition claims that gubernatorial failure to submit nominees allegedly deprives petitioner and all other Senators of their constitutional right and duty to advise and consent with respect to the appointment of incumbents of public office, pleading that petitioner's interest in the matter is distinct from the interest of the general public.

As a remedy, petitioner asks that we order that the Governor nominate appointees to the various positions, for petitioner's and the Senate's advice and consent; also requested is "such further relief as may be just and appropriate." Alternatively, in the brief and upon argument, petitioner proposes relief by declaratory judgment holding that the Governor's power to appoint has been forfeited by reason of the expiration of the 90 day time limit.

On behalf of the Governor as respondent, we have preliminary objections in the nature of a demurrer alleging that:

I. Petitioner lacks standing to bring this action;

II. The question here is a non-justiciable political one because gubernatorial appointments are committed exclusively to the power of the executive branch;

III. The 90-day provision of Article IV, §8 of the constitution is directory and not mandatory; and

IV. No action will lie because of the absence of any duty in the Governor or any legal right possessed by petitioner.[1]

We treat this proceeding as one having aspects of mandamus, declaratory judgment and equity, on the basis of the remedies sought. As the Pennsylvania Supreme Court stated in *Francis v. Corleto*, 418 Pa. 417, 421, 211 A.2d 503, 505 (1965):

Mandamus is a high prerogative writ representing an extraordinary remedy which will not be granted in doubtful cases. It will issue only where there is a clear and specific legal right in plaintiff and a corresponding duty in defendant and a want of any other adequate and appropriate remedy. In addition, mandamus may be used only to compel performance of a purely ministerial or mandatory duty. (Citations omitted.)

For equitable or declaratory orders having a binding effect, the standards are equally stringent.

We will consider the issues raised by the objections in the order above listed.

## I.

Does petitioner, in his capacity as a member of the Senate of Pennsylvania, lack legal interest in the sub-

---

[1] Respondent also included a claim of laches against petitioner as one of the objections. The laches claim, more appropriately to be presented as an affirmative defense rather than a preliminary objection, according to Pa. R.C.P. No. 1030, has not been pressed here.

ject matter so that he does not have standing to pursue this action?[2]

For this question, both parties place their main reliance on *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 363 A.2d 876 (1976), in which this court held that a legislator, his vote on the matter having been exercised, no longer had standing to obtain injunctions concerning the operation of a legislatively-authorized mental-health-care facility. We followed the principle of *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), that, to have standing, a litigant must have a direct and substantial interest in the claim, meaning that there must be some discernible adverse effect to his interest beyond the abstract interest of all citizens in obtaining compliance with the law. Judge MENCER's *Wilt* case opinion added:

> [L]egislators, as legislators, are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with. . . . To give but one familiar example, under the Pennsylvania Constitution, members of the Senate have the duty to approve or disapprove certain appointments made by the Governor. Interference with the performance of this duty would be an injury to members of the Senate sufficient to give each Senator standing to protect the injury to his or her

---

[2] Closely related to the objection concerning standing is a separate petition, submitted on behalf of the respondent Governor, for disqualification of petitioner's counsel, on the ground that it is not proper for petitioner to be represented by the chief counsel of the majority caucus of the Senate, employed by the state, because petitioner lacks standing in his official senatorial capacity. *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 306-7, 363 A.2d 876, 881-82 (1976).

'constitutional right' to vote for or against confirmation of an executive appointee.

*Wilt v. Beal,* 26 Pa. Commonwealth Ct. at 305-306, 363 A.2d at 881. (Footnotes omitted.)

*Coleman v. Miller,* 307 U.S. 433 (1939) presented a consistent analogy, holding that state legislators have standing to attack the breaking of a tie vote by a lieutenant governor, in view of their interest in maintaining the effectiveness of their vote.

Respondent does not dispute that, after the Governor has made an appointment, a Senator has a constitutional interest in seeing that the appointee not take office without the advice and consent of the Senate, noting the above-quoted dictum from *Wilt v. Beal, supra,* and the decisions in the two quo warranto cases of *Frame v. Sutherland,* 459 Pa. 177, 327 A.2d 623 (1974) and *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237 (1973), relating to gubernatorial appointments during recess of the Senate. On the other hand, respondent argues, a Senator can have no interest in the matter before the Governor submits the name of a nominee.[3]

However, remembering the maxim that equity deems that done which ought to be done, the question of each Senator's interest and standing is here obviously dependent on whether or not the Governor has a legal duty to submit nominations to the Senate within the 90-day period or at any time.

Granting that the power of appointment is intrinsically an executive function, *Daly v. Hemphill,* 411 Pa. 263, 270, 191 A.2d 835, 840 (1963),[4] and that

---

[3] Inaction by an executive may confer standing as in *Kennedy v. Sampson,* 511 F.2d 430 (DC Cir. 1974), concerning a U.S. Senator's challenge of a pocket veto.

[4] Attempts to provide by statute for legislative involvement in a Governor's constitutional power of appointment have not been upheld. *Bradner v. Hammond,* 553 P.2d 1 (Alaska, 1976).

the grant of the " 'right to advise and consent' " suggests that the legislature is barred from " 'every other right of interference with Executive functions,' " *Myers v. United States,* 272 U.S. 106, 169 (1926), we must recognize that the question here nevertheless turns upon that very "right" of the Senate to advise and consent so that we primarily must consider if the power of the constitution itself, apart from the legislative power, commands the Governor to bring his appointments to that juncture at which the right to advise and consent is alive.

## II.

However, before even reaching that point, we must first determine if this case poses a non-justiciable political question, outside the ken of the judicial branch.

To articulate the doctrinal premise governing this issue, both parties cite *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977) and *Baker v. Carr,* 369 U.S. 186 (1962). The latter case, 369 U.S. at 198, explained the distinction between lack of jurisdiction (not claimed here), where the court is entirely barred, and non-justiciability, where the court must look into the matter sufficiently to decide if that doctrine pertains.

As respondent well points out, the *Baker* case, *supra,* 369 U.S. at 217, comprehensively lists the criteria which make a question non-justiciable, as follows:

1. A textually demonstrable constitutional commitment of the issue to a coordinate governmental branch (parallel to the criterion in *Sweeney, supra,* 473 Pa. at 510, 375 A.2d at 706, of whether the Pennsylvania Constitution "commits" the power exclusively to one branch for "self-monitoring");

2. A lack of judicially discoverable and manageable standards for resolving the question (echoing another statement in *Baker*, 369 U.S. at 198, as to whether the duty asserted can be judicially identified and its breach judicially determined);

3. Impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

4. Impossibility of a court undertaking an independent resolution without expressing a lack of respect for the other branches;

5. A need for unquestioning adherence to a political decision already made;

6. The potentiality or embarrassment from multifarious pronouncements by various branches on one question; or

7. Impossibility of protection for the right asserted being judicially molded (*Baker, supra,* 369 U.S. at 198); that is, impossibility of an appropriate judicial remedy.

Approaching the issue with these criteria as tools for analysis, we find that the first criterion—i.e., whether the submission of appointments has been textually committed to the executive for self-monitoring—is of no great help. Our constitutional text here involves both the executive and legislative branches, and it contains no explicit suggestion of commitment in any exclusive sense for self-monitoring. Indeed, the amendment's addition of extrinsic controls, in terms of time limits newly imposed upon both the executive and the Senate, suggests mainly that the nominating and consenting elements of the appointment function are now *not* to be left wholly to the untrammeled discretion of the participants.

As to the second criterion, the existence of judicially manageable standards, the provision in question

here does not confront us with an abstruse generality or a subjective criterion, but provides objective time limits of 90 days (and 25 days) which themselves are certainly judicially manageable, identifiable and determinable. In contrast to the complexity of the one-person-one-vote problems deemed justiciable by *Baker v. Carr, supra,* it is simple here to measure the passage of the time limits by calendar and almost as simple to mark the "first day of the vacancy" as the starting point.[5]

As to the third *Baker* criterion, the impossibility of deciding without making an initial policy determination of a non-judicial type, it is clear that no such policy question confronts us either in our initial consideration or in recurring contact with implementation in the future. Neither the present adjudication nor future enforcement would involve any judicial policymaking. The wording of the constitutional provision, if mandatory, clearly does not require the Governor to act but only to act in a timely fashion, if he does choose to act; its terms do not disturb the executive prerogative to leave an administrative position unfilled if he chooses. Hence, the court is not called upon to command a nomination to this or that position. At most it would seem that we would be required only to declare the result of not observing the 90 day time limit—a point to be considered

---

[5] On the question of whether or not an office occupied on a holdover basis is vacant, resort to the constitutional or statutory provisions governing the specific office is required. Illustratively, where a constitutional or statutory provision allows an incumbent to remain until a successor is appointed and qualified, there is no "vacancy", e.g., in the case of certain borough offices, *Commonwealth ex rel. Matthews v. Lomas,* 302 Pa. 97, 153 A. 124 (1930), and certain county offices, *Commonwealth v. Wise,* 216 Pa. 152, 65 A. 535 (1907). The opposite may be true where the constitution limits the term of a state office without a holding-over provision. *Commonwealth v. Sheatz,* 228 Pa. 301, 77 A. 547 (1910).

further in examining remedies. And, of course, petitioner does not call upon us to select any nominees.

By the same token, as to the fourth *Baker* criterion, for us to interpret the time limit on appointment as mandatory would not constitute any disrespectful interference with either the executive or the Senate.

The fifth and sixth *Baker* criteria are obviously not involved; there is no previous political decision to be followed, nor would our involvement produce a multitude of conflicting pronouncements.

On the final test, the feasibility of judicial enforcement, we can see no special difficulty. There would be nothing unusual in the customary results of such enforcement, such as judicial determinations, in quo warranto or otherwise, that an office filled or nomination made is not lawful because of lateness.

Although not strictly before us in this decision upon preliminary objections, we can foresee some interpretation questions which the constitutional language itself poses in its application, questions having some bearing on the ease of enforcement. Frankly noting some such matters, we can anticipate the necessity of applying this constitutional provision where, for example a continuing vacancy bridges the terms of two different governors. Unlike the previous constitutional language pertaining to recess appointments where, as we noted in *Stroup v. McNair*, 5 Pa. Commonwealth Ct. 244 (1972), *aff'd sub nom. Stroup v. Kapleau*, 455 Pa. 171, 313 A.2d 237 (1973), the phrase "vacancies happening" meant that a vacancy continues to "happen" each day, the amendment before us narrows the starting point to "the first day of the vacancy." Thus, if the first day of the vacancy occurs near the end of one Governor's term and the vacancy remains for more than 90 days before the new Governor takes office, is the consequence of

neglect by the former Governor to be visited upon the new Governor? To read it so would be an impossible absurd interpretation because it would, in such cases, defeat the very power of appointment which the constitution clearly confers upon each succeeding Governor as a rightful power or duty or both. In construing constitutions, as in construing statutes, an absurd or impossible result must be avoided. *See* 1 Pa. C.S.A. §1922(1). At the very least, "the first day of the vacancy," must be deemed to be not earlier than the first day of the vacancy as it might exist in each Governor's new term.

Another type of interpretation question, noted by both parties, is whether or not a provision found mandatory could be reasonably implemented with respect to the present Governor where, without the guidance of a judicial interpretation, more than 90 days have passed since his inauguration and, in some cases, since the inception of a later-occurring vacancy. Should we find the rule to be mandatory, to implement it in a retrospective manner, by counting 90-day periods from dates 90 days or more before the final order in this case, would result in positions being left vacant (for the balance of the term) by judicial mandate instead of gubernatorial discretion, which would certainly brook sound policy as well as common sense.

However, it is an accepted rule that courts must have reasonable control over the retrospective effect of their decisions. Even as to the implementation of precious fundamentals under the Bill of Rights, our Supreme Court, in *Commonwealth v. Negri,* 419 Pa. 117, 123, 213 A.2d 670, 673 (1965) quoting *Linkletter v. Walker,* 381 U.S. 618, 629 (1965) has said:

'[W]e believe that the Constitution neither prohibits nor requires retrospective effect. . . .'

The approach then is to 'weigh the merits and

demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' (Citation omitted.)

Further, the *Linkletter* case, *supra,* said that "the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." 381 U.S. at 628.

In *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977), dealing with an issue of civil law constitutionality, the Pennsylvania Supreme Court reiterated the concept of "weighing the inequity of retrospective application." 473 Pa. at 622, n. 6, 375 A.2d at 1289, n. 6.

The same *Schreiber* opinion also spells out a standard to guide judicial choice on the matter, as follows:

> In Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971), the United States Supreme Court stated that the threshold test in deciding whether a new decision might be given prospective application only is whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed. 404 U.S. at 106, 92 S.Ct. at 355. Only such a new principle of law may qualify for nonretrospective application. (Footnote omitted.)

473 Pa. at 622, 375 A.2d at 1289.

Here the issue, arising from a new constitutional amendment, is clearly one of first impression, not foreshadowed at all.

Therefore, under that logical power of the courts to withhold retrospective operation, a solution is

available by holding that, initially, no 90-day period shall start earlier than the effective date of the court's order. A prospective approach is especially appropriate because we are mindful that the major concern here is for the guidance of Governors and Senators of the future, even more than resolution of any dispute involving present incumbents.

Hence, in summary as to the overall question of justiciability, we conclude that this matter by its terms has not been committed to self-monitoring by the respective branches of government involved. If the time limit is to be found mandatory, we would anticipate it to be judicially manageable in terms of identifying when appointive duty arises and is breached, without any judicial involvement in the substance of what appointments are to be made or who is to be appointed. Accordingly, we regard the question as a justiciable one, not to be avoided by the courts.

### III.

We come to the pivotal issue: Is the constitutional provision mandatory or directory?

In *Delaware County v. Department of Public Welfare,* 34 Pa. Commonwealth Ct. 165, 172, 383 A.2d 240, 243 (1978), we pointed out that, although both mandatory and directory provisions are meant to be followed, a distinction arises as to the effect of noncompliance because failure to follow a directory provision does not invalidate the action but disobedience of a mandatory clause renders the action illegal and void.

It is noteworthy that this provision says that the Governor "shall" fill vacancies by nominating within the 90-day period "and not thereafter." A constitutional provision is to be considered only directory when the phrasing lacks insistence that the act "shall be performed at the time or in the manner prescribed, and no other." *See Commonwealth v. Clark,* 7 W. & S.

127, 133 (1844). An express direction that the function not be performed after expiration of the time limit is characteristic of a mandatory requirement.

The Pennsylvania Supreme Court, in construing procedural time limits with respect to a matter as solemn as amending the constitution itself, in *Tausig v. Lawrence*, 328 Pa. 408, 413-14, 197 A.2d 235, 238 (1938) held:

> To withhold strict compliance with the three months' limitation and substitute a different method of advertisement which substantially accomplishes the desired result would be to rewrite the constitutional provision. It has in clear, specific language determined what must be done to change or amend the fundamental law. Nothing short of a literal compliance with this mandate will suffice. The Constitution has a more sacred position in judicial interpretation than does an act of assembly and judicial exploration should never have as its fulcrum the basic law. Otherwise a dangerous precedent would be created by substituting the court's own pronouncement for the fundamental law of the State. To hold the advertising provisions do not require literal compliance would create the danger that other procedural steps required by the article may be modified or omitted entirely. No uncertainty or compromise is suggested by the phrase 'and the Secretary of the Commonwealth *shall* cause the same to be published.' Any period less than that prescribed by the section will not suffice. (Emphasis in the original.)

In footnote 4 of that opinion, the Supreme Court quoted 1 Cooley Constitutional Limitations 159 (8th Ed., 1927), stating:

> 'But the courts tread upon very dangerous ground when they venture to apply the rules

which distinguish directory and mandatory statutes to the provisions of a constitution. *Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done, . . .* If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only. . . .' (Emphasis by the Supreme Court.)

We were guided by *Tausig* in *Middle Paxton Township v. Borough of Dauphin,* 10 Pa. Commonwealth Ct. 431, 308 A.2d 208 (1973), *aff'd.* 458 Pa. 396, 326 A.2d 342 (1974), where, in an opinion by President Judge BOWMAN quoting the above passages, we held that the failure of the legislature to act on annexation laws, within a constitutional time limit, abrogated the pre-existing annexation legislation.

Both briefs here have offered for consideration some of this constitutional amendment's legislative history, which we may consider even where a statute is unambiguous. *United States ex rel., Tillery v. Cavell,* 294 F.2d 12, 15 (3rd Cir. 1961). Although committee and legislative commission reports may be considered, the remarks of individual legislators in debate are not relevant for the obvious reason that they represent only one person's view and not that of a proposing body or an enacting body. *Martin Estate,* 365 Pa. 280, 283, 74 A.2d 120, 122 (1950); *National Transit Co. v. Boardman,* 328 Pa. 450, 197 A. 239 (1938); *Tarlo's Estate,* 315 Pa. 321, 172 A. 139 (1934). *See also* 1 Pa. C.S. §1939.

The proposing body here was a special committee to study confirmation procedure. That committee's report was entitled "Senate Confirmation of the Gov-

ernor's Appointments." From examination of the history of recess appointments (considered by some of the cases cited above) and other problems, the report proceeded to note that the former language of Article IV, §8 had been accompanied by "indefensible delay by the Senate, circumvention of the constitutional requirement by the Governor and excessive political maneuvering by the Senate and the Governor," thus subjecting both branches to criticism. The report stated that the Senate had held nominations overlong, being subject to no time limit, and that Governors had made recess appointments to circumvent senatorial consent. The remedy proposed was to eliminate the provision for recess appointments and to insert the 90-day and 25-day time limits.

As to the latter time limit, we note that it would be hard to dispute the mandatory nature of the 25-day time limit imposed upon the Senate. Because expiration of that time limit without Senate action has the positive result of placing the nominee into office, its mandatory nature is inescapable. We find it difficult to believe that the voters who ratified and thus gave life to this constitutional provision could have understood it otherwise than to mean that both time limits were equally meaningful and equally mandatory.

Our Supreme Court has repeatedly held that constitutional language is to be interpreted in its popular sense as the people, who adopted it as their governmental charter, must have understood it when they voted on it. *Brereton Estate,* 355 Pa. 45, 54, 48 A.2d 868, 872 (1946) and cases cited therein; *Commonwealth v. Harmon,* 469 Pa. 490, 494-95, 366 A.2d 895, 897 (1976).

Initial interpretation problems in treating the provision as mandatory have been considered above under the heading of judicial feasibility—the matters

60

of applying the provision logically when a vacancy bridges two gubernatorial administrations, and applying it only prospectively in the present circumstances, so that its command may confront in a fair manner each succeeding Governor and the present incumbent as well.

We cannot read the passage other than as mandatory, following its terms that the Governor shall fill vacancies "by nominating . . . within 90 days of the first day of the vacancy" (as made applicable to each Governor's administration) "and not thereafter," signifying that a Governor may exercise his executive prerogative to fill vacancies or not, but that, if he desires to do so, he must exercise the power during the period it is vested in his hands, and not thereafter.

## IV.

From the conclusion that the provision is mandatory, it follows that petitioner's right to have nominations submitted within the stated period, and not thereafter, confers a legal interest and thereby gives petitioner standing herein.

The mandatory nature of the requirement establishes a duty, so that an action such as this, seeking a binding declaration or order, is a proper remedy.

The preliminary objections must be dismissed.

In addition, respondent's Petition for Disqualification of Petitioner's Counsel will be dismissed as a consequence of our determination that petitioner does have standing to bring this action in his official capacity.

### ORDER

AND Now, this 29th day of October, 1979 respondent's preliminary objections are dismissed, and respondent's Petition for Disqualification of Petitioner's Counsel is dismissed.

CONCURRING OPINION BY JUDGE DISALLE:

I join in the majority's opinion in all respects. While I do not believe that we have presently before us a case or controversy (in view of our decision here that the Governor may not be compelled to fill any vacancies at all in the first instance), it is equally clear to me that when the Governor does finally decide to fill a vacancy by sending a nomination to the Senate, a controversy will immediately arise; hence, I have no hesitancy in reaching the merits at this point. In my view, we should not forestall judicial consideration of this pressing constitutional matter any longer.[1] Indeed, it is regrettable that, because we are here dealing with preliminary objections, we may not enter a definitive order at this time, and finally dispose of this litigation.

---

[1] The Governor took office more than nine months ago and, as Petitioner alleges, hundreds of important public positions remain vacant.

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

As I perceive no fundamental private constitutional right raised in this proceeding which is brought by one member of the Senate of Pennsylvania in his capacity as a Senator against the Governor of the Commonwealth and which I believe to essentially involve a political question, I believe it is one in which the judiciary should not interfere. *See Baker v. Carr*, 369 U.S. 186 (1962); *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977).

The majority well analyzes *Baker* and *Sweeney* as applied to this case with respect to their articulated standards for determining if a political question should be judicially resolved. However, in my view, before reaching that issue one must first determine if the person bringing the cause asserts a violation

62

of a fundamental constitutional right. If not, a political question should not be judicially resolved even if the articulated standards for judicial interference into a political question would otherwise be met. The right granted to the *body* of the Senate of Pennsylvania to confirm gubernatorial appointments, Pa. Const. art. IV, §8(b), is not, in my opinion, a fundamental right of an individual Senator.

Consideration of the cause asserted, the relief sought, briefs filed and the oral argument advanced by the parties leaves no doubt in my mind that the issue raised is a political one which the judiciary someday may have to resolve in a proper posture and context. This case is not the one to do so.

I respectfully dissent and would dismiss the petition for review.