In Re: Tax Claim Bureau of Lehigh County etc.

Lawrence and Francesca Marra, Appellants.

Argued November 16, 1981, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Thomas C. Anewalt,* with him *William E. Doyle,* for appellants.

*Susan E. Mensch,* Assistant County Solicitor, with her *John P. Karoly,* for appellee, Tax Claim Bureau of Lehigh County.

*David F. Dunn,* for appellee, Lawrence and Francesca Marra.

OPINION BY JUDGE BLATT, March 30, 1982:

The appellants,[1] successful bidders in an upset tax claim sale of a premises known as 620 North Park Street, Allentown, Pennsylvania, seek review of an order of the Court of Common Pleas of Lehigh County sustaining the record owner's objections to the sale and declaring the transaction to be invalid and set aside.[2]

The facts in this case are not in dispute. The record owner of the property in question was appellee, Hattie J. Lewis, and on October 3, 1978, her property was exposed for sale[3] by the Tax Claim Bureau (Bureau) of Lehigh County for the non-payment of her 1976 and 1977 school and city taxes. On or about July 30, 1977, Mrs. Lewis received a notice from the

---

[1] Lawrence and Francesca Marra. We note that the Tax Claim Bureau of Lehigh County, although technically the appellee(s) take a position similar to that of the appellants.

[2] Additionally, the court below ordered that Mrs. Lewis be granted 60 days to redeem the premises by paying to the Bureau the amount of any outstanding tax claims, plus interest and costs on the property, and that the Bureau refund to the appellants all sums paid by them to it in connection with the sale of the premises.

[3] Pursuant to the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§5860.101-5860.803.

Bureau that she was delinquent in paying her 1975 and 1976 school and city taxes. Such notice indicated that if these taxes were not paid by December 31, 1977, her property would be sold at a future upset sale in order to satisfy the outstanding claims. Then, on or about June 7, 1978, the Bureau sent notice to Mrs. Lewis by certified mail that her property would be sold on October 3, 1978; however, this notice was not delivered to her and was returned as not received. Mrs. Lewis, on or about June 26, 1978, paid taxes in the sum of $255.82 directly in the City of Allentown. Such payment did not, however, reflect the applicable tax for which it was to be applied, but the Director of the Bureau did admit that Mrs. Lewis had paid her 1975 school and 1976 county taxes. Also introduced into evidence was an adding machine tape dated July, 1976 (no day stated) indicating payment of the 1976 city tax in the sum of $164.35, but the Bureau maintains that such amount was not received by them.[4] Then, on or about July 17, 1978, Mrs. Lewis received a notice of non-payment of taxes which showed delinquent 1976 city, county and school taxes and 1977 city and school taxes. This notice pro-

---

[4] The record reveals testimony indicating that there were two locations where delinquent tax payments might have been accepted: at the courthouse and at the city hall. Kathryn Moyer, the daughter-in-law of Mrs. Lewis, testified that during July of 1978, she and Mrs. Lewis went "downstairs" at the courthouse and stated to a female employee that they wished to pay Mrs. Lewis' delinquent taxes. The employee, according to Ms. Moyer, after consulting with her superior, informed them that although such location was not the place where delinquent taxes were paid, she would nevertheless take care of it. Ms. Moyer then testified that after tendering $164.35 in cash to the courthouse employee, she received a receipt tape in the aforementioned amount with "July, City, 1976" handwritten on it. Ms. Moyer further stated that the employee put such notation on the receipt because "she told me I was paying [Mrs. Lewis' delinquent] city tax."

vided that if these taxes were not paid before December 31, 1978, or if no exceptions were filed, that the claim would become absolute. The notice also stated that a one year redemption period would begin to run on July 1, 1978. Thereafter, on July 18, 1978, a notice of the October 3, 1978 sale was posted on Mrs. Lewis' property. Mrs. Lewis, whom the court below noted had a "second grade education and must depend upon others to interpret reading material for her," took the July 17, 1978 notice to her daughter-in-law, who in turn took it to an attorney for interpretation. Mrs. Lewis was advised that, according to the *express terms* of the July 17, 1978 notice, which showed delinquent 1976 and 1977 taxes—the very subject of the pending October 3, 1978 sale and July 18, 1978 posting—the taxes would not have to be paid until December 31, 1978. On October 3, 1978, Mrs. Lewis' property was sold to the appellants on the basis that she failed to pay her 1976 and 1977 taxes, for a bid price of $1,377.85. Mrs. Lewis filed timely objections and exceptions to the confirmation of the sale.

The court below, applying the doctrine of estoppel against the Bureau, declared the October 3, 1978 sale invalid because

[i]n this case, the Tax Claim Bureau's notification to the property owner regarding the October 3, 1978 sale of her property for unpaid taxes was almost simultaneous with another notice of non-payment of taxes wherein the property owner had until December 31, 1978 to pay the taxes and a further redemption period of one year commencing from July 1, 1978. It appears that the property owner acted in reliance on this notice. . . .

The instant appeal by the appellants followed.

All parties agree in their briefs that the sole issue in this appeal is whether or not the court below committed an error of law in applying the doctrine of estoppel against the Bureau on the basis of the July 17, 1978 notice.

We have recognized that equitable estoppel is a doctrine of fundamental fairness which can be applied to a governmental agency under appropriate circumstances to preclude an agency from depriving a person of a reasonable expectation when such agency knew or *should have known* that such person would rely upon the representations or conduct of the agency. *DeFrank v. County of Greene*, 50 Pa. Commonwealth Ct. 30, 412 A.2d 663 (1980); *see Breinig v. Allegheny Co.*, 332 Pa. 474, 2 A.2d 842 (1938) (a municipality like a private corporation is subject to the doctrine of estoppel). In other words, equitable estoppel arises when a party by his acts or representations, intentionally or *through culpable negligence,* induces another to believe that certain facts exist and such other party relies and acts or fails to act (to his detriment) due to the instilled belief. *Department of Revenue v. King Crown Corp.*, 52 Pa. Commonwealth Ct. 156, 415 A.2d 927 (1980) (estoppel appropriate in a taxation case).

The appellants and the Bureau, in seeking to have the sale validated, argue that the July 17, 1978 notice, even though it showed the 1976 tax delinquency, pertained *only* to a future or 1979 upset tax sale for a failure to pay taxes in 1977 and was not applicable to or did not affect the October 3, 1978 sale. According to their argument, the necessary requirement of reliance is wanting here and, therefore, the doctrine of estoppel cannot be found to obtain because Mrs. Lewis knew or should have known that her property

was to be sold on the basis of the 1976[5] taxes outstanding and that the July 17, 1978 notice was solely for a possible future or 1979 sale.

We believe, as did the court below, that the appellants' and the Bureau's argument is without merit. We find that sufficient evidence exists upon which the lower court could have reasonably concluded that Mrs. Lewis relied[6] in good faith on the terms of the July 17, 1978 notice. Moreover, we believe the Bureau *should have known, DeFrank,* that Mrs. Lewis would rely on the terms of the July 17, 1981 notice and that the lower court, therefore, correctly concluded that such notice did induce her to believe that she had until December 31, 1978, to pay her *1976* (and 1977) delinquent taxes because such notice referred specifically to these 1976 and 1977 taxes which were also the subject of the then upcoming October 3, 1978 sale.

We also reject the portion of the appellants' argument contending that estoppel is inappropriate here because the Bureau's officers erred in sending the July 17, 1978 notice with reference to the 1976 taxes. Rather, we find nothing in the record which demonstrates that the Bureau's officers acted outside of their authority in sending the July 17, 1978 notice as was received. *King Crown.*

Although we share the Bureau's concern that taxpayers pay taxes in a proper and timely manner, we are, however, just as concerned that tax enforcement procedures be conducted in a similar fashion which is

---

[5] Note, however, although the 1976 taxes were the basis of the October 3, 1978 sale, the purchaser had to pay for existing delinquent 1977 taxes in order to buy the property. This is the reason why the property was characterized by the Bureau and lower court as being sold for both the 1976 and 1977 delinquent taxes.

[6] It is undisputed that the *1976* and 1977 taxes were the subject of the July 17, 1978 notice and it is obvious that Mrs. Lewis was injured or prejudiced by that reliance.

fundamentally fair. *DeFrank.* Here, the Bureau properly informed the taxpayer that her property would be sold on October 3, 1978, for the non-payment of her 1976 taxes, but almost simultaneously informed her in the July 17, 1978 notice that she had until December 31, 1978 to pay such 1976 taxes. We agree with the court below that " '[t]he purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes,' and that the very power given by the Act carries with it the responsibility of seeing its conditions are complied with." *Ross Appeal,* 366 Pa. 100, 106, 76 A.2d 749, 753 (1950) (quoting *Hess v. Westerwick,* 366 Pa. 90, 98, 76 A.2d 745, 748 (1950)).

The Bureau did have several alternatives, in this situation, which would have precluded Mrs. Lewis from being led to rely on the July 17, 1978 notice which provided that she had until December 31, 1978 to pay her 1976 taxes. For instance: it could have omitted reference to the 1976 taxes in such notice; it could have reasonably notified her that notices pertaining to future sales do not supersede prior notices of other sales involving the same property; or, it might not have sent subsequent notices when the property was already listed for sale.[7]

Finding no error of law or abuse of discretion, we will, therefore, affirm the order of the court below.

ORDER

AND Now, this 30th day of March, 1982, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is hereby affirmed.

---

[7] It is, of course, not within the province of this Court to tell the Bureau how to operate. We do, however, believe the Bureau capable of arriving at some method, if not one of the aforementioned, which would be fundamentally fair, appropriate and consistent with this opinion in situations such as the present one.

Judge PALLADINO did not participate in the decision in this case.