Township of Connoquenessing, a Township of the Second Class, Appellant *v.* Township of Butler, a Township of the First Class, et al., Appellees.

Argued March 11, 1985, before Judges CRAIG, COLINS and PALLADINO, sitting as a panel of three.

*Charles F. Flach, III, Murrin, Murrin & Taylor,* for appellant.

*Bruno A. Muscatello, Stepanian & Muscatello,* for appellee, Township of Butler.

OPINION BY JUDGE CRAIG, April 9, 1985:

Connoquenessing Township appeals from a decision of the Court of Common Pleas of Butler County, which dismissed a declaratory judgment action Connoquenessing had brought against Butler Township

seeking the invalidation of a contract the two townships had executed to fix a boundary between the two townships. We must determine whether the trial court properly concluded that the result of that contract cannot now be undone.

On August 15, 1977, Connoquenessing, a second class township, and Butler, a first class township, entered into an agreement which purported to fix a boundary between the two townships that had, according to the agreement, "been subject to dispute"; the alleged dispute concerned a relatively small area, approximately 1800 feet by 500 feet. The apparent effect of the agreement was to include in Butler Township property which formerly had been in Connoquenessing Township. There was no referendum on the matter, and, although the townships recorded the contract in the Butler County recorder's office, they did not submit it to the court of common pleas for approval.

Connoquenessing filed a declaratory judgment action in January, 1983, seeking the invalidation of the contract on the ground that the townships were without power to alter the boundary lines by agreement. Judge BRYDON, relying on our *Collier Township* decisions,[1] concluded that the initiative and referendum procedure is now the only vehicle available for changing municipal boundaries, and therefore further concluded that the townships had been without authority to enter into their agreement. However, the trial court applied the doctrine of equitable estoppel to bar Connoquenessing's attempt to repudiate the contract; accordingly, it dismissed the declaratory judgment action and affirmed the townships' agreement.

---

[1] *Collier Township v. Robinson Township*, 25 Pa. Commonwealth Ct. 227, 360 A.2d 839 (1976) ; *Collier and Robinson Townships Boundary Dispute*, 25 Pa. Commonwealth Ct. 230, 360 A.2d 841 (1976).

Connoquenessing contends that the case is not a proper one for the application of equitable estoppel and that, because the townships were without legal ground to alter their boundaries or arrange an annexation, we should declare the contract void.[2]

However, as the contract itself recites, this case originated as a "boundary dispute"; Judge BRYDON expressly found that the purpose was "to resolve potential conflicts. . . ." Therefore, it differs qualitatively from an invalid attempt at annexation. The First Class Township Code provides, in section 302, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §55302, a method for the resolution of boundary disputes outside the initiative and referendum process. The same provision appears in The Second Class Township Code at section 302, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65302.[3]

The trial court apparently interpreted the decisions of this court as invalidating those sections. In *Middle Paxton Township v. Borough of Dauphin,* 10 Pa. Commonwealth Ct. 431, 308 A.2d 208 (1973), *aff'd* 458 Pa. 396, 326 A.2d 342 (1974), we concluded that the legislature's failure to meet the two-year deadline of the 1968 Pennsylvania Constitution (for the establishment of uniform legislation setting forth "the procedure for consolidation, merger or change of the boundaries of municipalities") had abrogated the ex-

---

[2] Butler Township continues to press its argument that Connoquenessing failed to follow the procedural requirements for a declaratory judgment action. This court earlier ruled on that contention in denying Butler's motion to dismiss the appeal. We now have no basis on which to rule differently.

[3] The identical language of both sections provides:

The courts of quarter sessions may, upon the presentation of a petition . . . (c) ascertain and establish disputed lines and boundaries between two or more townships or between townships and cities or boroughs.

53 P.S. §§55302, 65302.

isting legislation and left initiative and referendum as the sole remaining procedure for altering boundaries. Following that reasoning, this court concluded that section 302(a) of The First Class Township Code, 53 P.S. §55302(a), which had permitted the alteration of township lines "to suit the convenience of the inhabitants", was invalid.

This court further clarified this area of the law in *Laflin Borough v. Yatesville Borough v. Jenkins Township*, 44 Pa. Commonwealth Ct. 402, 404 A.2d 717 (1979), where we concluded that section 502 of The Borough Code, Act of February 1, 1966, P.L. (1965), 1656, *as amended*, 53 P.S. §45502, which tracks the language of the two township code sections cited above, was not invalid because it did not relate to "consolidation, merger or change" of municipal boundaries within the meaning of the constitutional section.

We find the reasoning and result of the *Laflin Borough* case controlling here; we do not believe that the drafters of the constitution intended that all minor municipal boundary disputes be settled by the initiative and referendum process. Thus, we conclude that the townships' agreement is not invalid because of the failure to follow the initiative and referendum procedures.

However, even where townships achieve an amicable resolution of a boundary dispute, the statutory pattern requires the intervention of a court. 53 P.S. §§55302, 65302. The interests of the citizens, as well as those of the municipal entities, are involved in all boundary disputes, and the court's participation functions to protect those concerns.

Under our characterization of the issue, Judge BRYDON's reliance on equitable estoppel remains applicable and, indeed, has even greater force. If this were an attempted annexation, the absence of a voters'

referendum would be more significant than the failure to obtain court approval of the agreement.

In his thoroughgoing analysis, which we adopt, Judge BRYDON states:

The doctrine of equitable estoppel may be asserted against a municipality. Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842 (1938); Albright v. City of Shamokin, 277 Pa. Super. 344, 419 A.2d 1176 (1980). Although a municipality will not ordinarily be bound for the acts of its agents in excess of its corporate powers, a municipality may be estopped to deny the authority of its agents to act if it has the power to act. Breinig v. County of Allegheny, 332 Pa. at 485-486, 2 A.2d at 849-850; Albright v. City of Shamokin, 277 Pa. Super. at 348, 419 A.2d at 1178. A municipality may also be bound for an act of its agents in excess of its corporate powers if the act is "ultra vires" only in a secondary sense as opposed to "ultra vires" in a primary sense. Albright, 277 Pa. Super. at 348, 419 A.2d at 1178. The "ultra vires" distinction is explained in Albright as follows:

However, "[t]here is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice." City of East Orange v. Board of Water Commissioners of East Orange, 73 N.J. Super. 440, 464, 180 A.2d 185, 199 (1962); Summer Cottagers'

Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504, 117 A.2d 585, 590-91 (1955).

Albright, 277 Pa. Super. at 348, 419 A.2d at 1178. See Appeal of District Council 88, 60 Pa. Commw. 163, 430 A.2d 1217 (1981).

The court concludes that the agreement between Connoquenessing Township and Butler Township which altered the boundary line was an ultra vires act only in the secondary sense. The power of First and Second Class Townships to alter boundaries is not an act utterly beyond the jurisdiction of a municipality.

. . . .

In order to apply the doctrine of equitable estoppel to the "secondary ultra vires act" of Connoquenessing and Butler Townships all of the elements of equitable estoppel must be met. As stated in Sec. 90 of the Restatement (Second) of Contracts the doctrine of promissory estoppel is applicable to a promise which reasonably induces action or forbearance:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

In the instant case Connoquenessing Township and Butler Township intended that their mutual contractual promises would alter the boundary between the two townships. The townships agreed to establish the new boundary line in order to resolve potential conflicts concerning road maintenance, municipal services

and taxation. The agreement to alter the boundary line between Butler Township and Connoquenessing Township dated August 15, 1977 was duly recorded in the Office of Recorder of Deeds of Butler County in Deed Book 1050 ,page 603. The two townships have recognized this contractual boundary between Connoquenessing Township and Butler Township from August 15, 1977 (the date of the agreement) until January 13, 1983 when Connoquenessing Township challenged the legality of the boundary change by instituting an action for declaratory judgment in this court.

The court concludes that in the instant case the mutual promises of the townships were such that the townships should have reasonably anticipated that each would rely on the new boundary, and structure road maintenance, municipal services and taxation in accordance with the agreement. Furthermore, when the municipalities altered the line and entered the Agreement of record, it became public knowledge; and the municipalities should have known that the public in general would be justified in relying on the record as shown. See In Re Tax Claim Bureau of Lehigh County, 65 Pa. Commw. 496, 500-501, 442 A.2d 1213, 1215 (1982).

It is apparent that in the case at hand Butler Township, Connoquenessing Township, West Penn Power Co., Pennsylvania Power Co., Butler Township Area Water and Sewer Authority and purchases [sic] of lots in the Winterwood Estates Plan of Lots have relied upon the recorded agreement which altered the boundary between Butler Township and Connoquenessing

Township. After the respective township solicitors approved the agreement and the agreement was recorded, Butler Township adopted and maintained that portion of Winterwood Drive situated in Butler Township; and Connoquenessing Township adopted and maintained that portion of Winterwood Drive situated in Connoquenessing Township. Electric services are being provided in the affected area in Butler Township by West Penn Power Co. and by Pennsylvania Power Co. in the affected area in Connoquenessing Township. Sewage lines were installed by the Butler Township Area Water and Sewer Authority, which is now providing sewage services to those homes in the affected area in Butler Township. Several lots were sold to purchasers who relied on the assertion that the lots were located in Butler Township; such purchasers could be said to have relied on the status of the record to determine where they wanted to live. Houses have been built and real estate and personal taxes have been assessed against the owners of the houses in accordance with the agreement. Butler Township has maintained its portion of Winterwood Drive to the end of the township line and twenty-four hour police and fire protection have been afforded the residents of Butler Township. In light of the foregoing, it is clear that lot owners in the Winterwood Estates Plan of Lots, townships, utility providers and members of the general public have relied on the contract between Butler Township and Connoquenessing Township such that these individuals and municipal service providers would be prejudiced if Connoquenessing Township is

permitted to deny the existence of the agreement.

The court determines that Connoquenessing Township is estopped from questioning the validity of the agreement dated August 15, 1977, which altered the boundary line between Butler Township and Connoquenessing Township. Butler Township, West Penn Power Co., Pennsylvania Power Co., Butler Township Area Water and Sewer Authority, and purchasers of lots in the Winterwood Estates Plan of Lots have reasonably relied on the agreement between the townships. Equity requires that Connoquenessing Township be estopped from refuting the agreement. To deny the validity of the agreement would work injustice and wrong to those who with good reason and in good faith have relied upon the agreement. See Fraternal Order of Police v. Hickey, 499 Pa. 194, 452 A.2d 1005 (1982); Albright v. Shamokin, 277 Pa. Super. 344, 419 A.2d 1176 (1980); DeFrank v. County of Greene, 50 Pa. Commw. 30, 412 A.2d 663 (1980). According to the affidavit of Thomas W. Roe, the owner of all the land involved in the instant case prior to the subdivision development of the same, reliance has been placed upon the status of the Township line by purchasers of lots in the affected area; Thomas W. Roe also stated in his affidavit that if the agreement were voided, these purchased lots would be in Connoquenessing Township. The Township of Connoquenessing should not be permitted to thwart the lot owners' expectations of benefits from living in Butler [Township]. Innocent lot owners who relied in good faith on the agreement between the municipal-

ities could be denied sewage services, twenty-four hour police protection and other municipal services provided by Butler Township that are not available in Connoquenessing Township. In addition, West Penn Power Company's franchise might prohibit providing electrical services to Connoquenessing Township since Pennsylvania Power Company provides electrical services to homes in Connoquenessing Township.

In reliance upon the agreement purchasers of lots have built houses; and real estate and personal taxes have been assessed against the owners of the homes in accordance with the agreement. Butler Township has maintained its portion of Winterwood Drive to the end of the Township line, and twenty-four hour police and fire protection have been afforded the residents of Butler Township.

In accordance with the foregoing, the court determines that the circumstances are such that injustice can only be avoided by affirming the validity of the agreement between Butler Township and Connoquenessing Township. The public interest demands that Connoquenessing Township be estopped from denying the validity of the recorded agreement between Butler Township and Connoquenessing Township, which has been held out to the public as valid for a little over five years. See DeFrank v. County of Greene, 50 Pa. Commw. 30, 412 A.2d 663 (1980); West Mead Twp. v. City of Meadville, 6 Pa. Commw. 265, 294 A.2d 600, *allocatur* denied (1972).

We concur with Judge BRYDON's conclusion that the doctrine of equitable estoppel prevents Connoque-

nessing from denying its contractual obligations and therefore affirm.

ORDER

Now, April 9, 1985, the order of the Court of Common Pleas of Butler County, A.D. No. 83-015, dated November 7, 1983 is affirmed.

Judge PALLADINO dissents.