**Wilson v. West Hanover Township**

*John W. Purcell, Jr.*, for plaintiff.
*Edward E. Knauss, IV*, for defendant.

NATALE, *J.*, September 30, 1986—This matter is before the court on defendant's motion for summary judgment pursuant to Pa.R.C.P. 1035. For the reasons stated below we will grant defendant's motion and dismiss the cause of action with prejudice.

In August 1985, plaintiff filed a complaint against defendant, West Hanover Township, claiming that damages were sustained due to a breach of an oral agreement by an agent of defendant. Defendants answered the complaint with new matter shortly thereafter. Plaintiff filed an answer to defendant's new matter and several months later defendant filed this motion for summary judgment. Briefs were submitted and an argument held. The motion is ready for disposition. A brief summation of the facts is in order.

Plaintiff is a general contractor in the business of residential development and construction. He owned a lot and secured a permit to install a "standard" septic system. The permit expired, however, before he started building on the property. In June 1983, plaintiff entered into a contract to construct a house on the lot. Two months later, plaintiff secured a septic permit for the construction of an "elevated mound" system.

In September 1983 (before he started to work on the system), plaintiff approached Robert Landon, (a member of the Board of Supervisors of West Hanover) and asked if there were any way he could get a permit to install a *standard* system instead of an *elevated mound* system. Mr. Landon indicated that such a system could be installed if plaintiff would indemnify the new sewage enforcement officer and the township from any claims arising out of the grant of such a permit.

Additionally, Mr. Landon told plaintiff that approval of the request was just a matter of form and

that a submission of the agreement would be enough to install the *standard* septic system. Relying on this, plaintiff submitted an agreement and without waiting for ratification, built the *standard* system. As will come as no surprise to the reader, the township did not ratify plaintiff's proposal. Plaintiff contacted Mr. Landon who assured him that the refusal was some mistake and assured him that the matter would be straightened out.[1] Sometime later, Mr. Landon resigned from the board of supervisors.

In December 1983, plaintiff was told by the sewer enforcement officer that the permit for the installation of the *elevated mound* system was to be revoked since the *standard* system was not allowed by the permit issued.

Plaintiff appealed to the board of supervisors and a hearing was held on February 6, 1984. As a result of the hearing, the board issued an opinion denying plaintiff's request to strike the permit revocation. In its opinion under findings of fact the board (in paragraph 12) noted: "John J. Wilson has been engaged in the construction business for approximately 30 years and, within the most recent ten years, has constructed approximately 30 homes in West Hanover Township."[2] Dissatisfied over the board's decision, plaintiff brought the current suit into this court.

There are three issues before us: (1) Is defendant liable for the verbal agreement made between plain-

---

1. Defendant generally denies that Mr. Landon made any such assertions. However, for the sake of argument we will assume plaintiff's allegations are true.

2. The board's opinion was a part of defendant's new matter. While plaintiff denied the legal conclusions of the opinion they did not deny any of the findings of fact contained therein. Therefore these facts are deemed to have been admitted.

tiff and Mr. Landon? (2) Does the principle of equitable estoppel preclude defendant from denying contractual liability? (3) Are there any unresolved material facts outstanding which would preclude the granting of summary judgment? We will address each in turn.

More than 100 years ago, in Somerset Township v. Parson, 105 Pa. 360 (1884), the court encountered a situation analogous to the case at bar. A road worker in Parson sought reimbursement for a damaged plow on the basis of an oral agreement made with one of the four township supervisors. The suit was brought before a justice of the peace who gave judgment for plaintiff in the exorbitant amount of eight dollars. Appealed to the common pleas court it was tried twice, each trial resulting in a verdict to plaintiff for eight dollars. The matter was appealed to the Pennsylvania Supreme Court, which reversed and granted the township judgment n.o.v. The basis for the reversal was that the agreement by the supervisor was beyond the ministerial power delegated to him and therefore not binding on the township. The common sense logic behind their position is summed up in the observation that "The affirmance of such a right would place the township at the mercy of a single supervisor." Id. at 105 Pa. 361.

Many years have come and gone yet common law has consistently followed this judicial line of reasoning down through the ages in such historic cases as Pennsylvania Railroad v. Montgomery County, 167 Pa. 62, 31 Atl. 468 (1898), American Road Machine Co. v. Washington Township, 9 Pa. Super 105, (1898) and Wheeled Scraper Co. v. Butler Township, 24 Pa. Super 477 (1904). Perhaps the most recent case which clearly demonstrates that the judicial system is not ready to abrogate the "Rule of

Parson" is Abington Heights School District v. South Abington, 72 Pa. Commw. 388, 456 A.2d 722 (1983).

In Abington the factual scenario involved a school district and a township negotiating over parcels of land. The school district and the township entered into negotiations whereby the former expressed its willingness to convey two parcels of land owned by them to the township. In exchange for this the township was to give the school district land that the township was about to acquire from the Turnpike Commission. An agreement to such an effect was drafted but never formally approved or executed. After the township acquired title, negotiations continued, yet a formal agreement was never approved or executed.

The school district's request for specific performance was denied since there was no evidence that the township supervisors acted as an official body. It was also found that the required formalities to establish a contract were not met and the school district had no right to rely on the individual action of any or several of the township supervisors. Id. at 72 Pa. Commw. 393, 456 A.2d 725.

We find Abington and its predecessors helpful in analyzing the case before us. As in Abington there are no allegations that the board acted in its official capacity. Additionally there is no question that the adequate disposal of sewage is not ministerial since it requires deliberation and judgment.[3] One only has to look at the enactment of the Pennsylvania Sewage Facilities Act, 35 P.S. §750 et. seq., to real-

---

3. The Abington court noted the long-standing Pennsylvania authority which indicates that matters requiring deliberation and judgment takes a matter outside "ministerial" powers. Id. at 72 Pa. Commw. 391, 456 A.2d 724.

ize this. The act mandates that sewage enforcement officers be employed by each local agency who are qualified by the Department of Environmental Resources in accordance with standards set by the Environmental Quality Board. 35 P.S. §750.8(b)(1). Only after an inspection is made by such an officer to determine the type of appropriate facility necessary for safe sewage disposal, can a permit be issued. 35 P.S. §750.8(b)(5). As such, it is clear that the issuance of such a permit is beyond mere ministerial powers.

Plaintiff's position is not simply that he had an agreement with Mr. Landon that should be enforced against the township. Plaintiff maintains that since he detrimentally relied on Mr. Landon's assertions, the township should be equitably estopped from denying the agreement, regardless of any legal defenses.

The case of Ervin v. City of Pittsburgh, 339 Pa. 241, 14 A.2d 297 (1940), sets out the doctrine of estoppel. In Ervin the court said:

"The doctrine of estoppel is founded on considerations of sound public policy. There are circumstances in which the law will not permit a man to gainsay to the prejudice of another some act or statement of his, in reliance on which that other has acted. The rule of law is clear that where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Id. at 339 Pa. 250, 14 A.2d 300.

Plaintiff correctly asserts that the principle of equitable estoppel can bind municipalities to agreements that they would not ordinarily be bound to.

The recent case of Township of Connoquenessing v. Township of Butler, 88 Pa. Commw. 530, 491 A.2d 288 (1985), clearly espouses this proposition. Therefore, the question is not whether the township *can* be estopped from honoring the agreement but whether they *should* be estopped from honoring the agreement.

In Connoquenessing two townships entered into an agreement which purported to fix a boundary line between them. A contract was signed and recorded in the Butler County recorder's office even though there was no referendum on the matter, nor was it ever submitted to the court of common pleas for approval. More than five years later, one township sought to invalidate the contract because such boundary disputes can be resolved only through referendum or by submission to the court.

Although the townships did not comply with the necessary legislative or judicial requirements, the court held that the township was estopped from denying its contractual obligations. This was done for three major reasons: (1) that it was obvious that the townships relied on the recorded agreement which the respective township solicitors had approved; (2) that the agreement was clearly an ultra vires act in the secondary sense and; (3) that various residents, townships, utility providers and members of the general public had relied for more than five years on the recorded contract establishing the boundary lines.

Connoquenessing, however, is a far cry from the case at bar for a variety of reasons. First of all it is to be remembered that here the township itself never entered into *any* type of agreement. The purported oral agreement was entered into by a supervisor exceeding his limitational powers. Had the board given written approval for the use of the sewage system

and then attempted to renege, the result may differ. Secondly, the ability to approve a sewage system is neither an ultra vires act in the primary or secondary sense but somewhere in between. While the act of approving sewage systems is not utterly beyond the jurisdiction of a municipality (ultra vires in the primary sense), the act can be ratified only if it is in compliance with the mandates set out by the Pennsylvania Sewage Facilities Act. And finally, in Connoquenessing the public had every right to believe that the recorded contract was valid and to rely thereon. Here there was no such written documentation or evidence that the board played any part in the oral agreement. In Abington Heights School District v. Township of South Abington the court said (after rejecting an equitable estoppel argument): "In the instant case (plaintiff) has no right to rely on the individual action of any or several of the township supervisors. The township can only be bound by the formal actions of the board of supervisors acting as such." Id. at 72 Pa. Commw. 393, 456 A.2d 725.

The final consideration we are faced with is whether the case is ripe for summary judgment. Pa.R.C.P. 1035(b) indicates that such a motion will be rendered only if there are no genuine issues to any material facts and that the moving party is entitled to a judgment as a matter of law. Are there genuine issues as to any material facts? Plaintiff maintains that whether his reliance on Mr. Landon's assertion was "reasonable" is such a fact. We disagree. Plaintiff is a contractor who has been in business for more than 30 years. The general rule is that one dealing with municipal officials is bound to know the limitations of their authority. DeFrank v. Greene County, 50 Pa. Commw. 30, 412 A.2d 663 (1980). It is clear that as a building contractor, with

many years' experience, he failed to take the precautions of a reasonable man in obtaining a written approval by the township board prior to the construction of the sewage systems.[4]

We are in agreement with the court in City of Bethlehem v. Wernett, 36 North. 330 (Pa. Com . Pl. 1962) when the court said:

"In issuing a permit, officials are discharging a governmental function and the city and its citizens cannot be bound or estopped by the unauthorized acts of its officers in pursuance of that function. The principle is well established that a public or governmental corporation like a municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority. The doctrine that principals are estopped to deny the authority of their agents acting within the scope of their power usually does not apply to public officers. The public has an interest which cannot be set at naught because of mistakes of either a zoning officer or even the board itself." Id. at 336.

Giving plaintiff the benefit of all evidence favorable to him, it remains clear that: (1) defendant is neither obligated to honor the orgal agreement nor liable for damages which arose therefrom; (2) the doctrine of equitable estoppel is inapplicable and;

---

4. In a similar case where a contractor failed to examine an ordinance prior to construction the court said: "On the contrary it is clear that as a former building contractor with many years experience, he failed to take the precautions of a reasonable man in examining the ordinance and, if necessary, obtaining the advice of counsel before committing himself to a project of such magnitude and thus brought his difficulties upon himself." See Waltz v. Zoning Board of Adjustment, 15 Chest. 285 at 292 (1967).

(3) defendant's request for summary judgment must be granted.

A hundred years ago, when deciding the matter of an eight dollar claim, in Parson, the Pennsylvania Supreme Court stated: "The sum in this controversy is small, but the question of the liability of the township on the claim is important." Id. at 360. While the sum in controversy may be much greater, the policy considerations surrounding townships liability is still of the utmost importance. Accordingly we enter the following

### ORDER

And now, this September 30, 1986, defendants request for summary judgment is granted and the action is dismissed with prejudice.