IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Proposed Annexation of Wilkinsburg by the City of Pittsburgh | : |
| | : |
| | : |
| Petition of: Tracey Evans, Monica Garcia, Debra Raubenstrauch, Vanessa Buffry and Michael Rose | : |
| | : |
| | : |
| | : No. 1376 C.D. 2022 |
| Intervenor Objectors: Carmen Brown, Renee Haynes-Johnson, Borough of Wilkinsburg, Moira Kaleida, Angel Gober, Susan Oerkvitz, Pamela Harbin and Evan Gascoine | : Argued: May 10, 2023 |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Appeal of: Tracey Evans, Monica Garcia, Debra Raubenstrauch, Vanessa Buffry and Michael Rose | : |
| | : |
| | : |
| | : |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE WOJCIK                          FILED:  July 13, 2023

Five residents of the Borough of Wilkinsburg (Appellants) appeal from the October 28, 2022 order of the Allegheny County Court of Common Pleas (trial court) that granted the objections of several residents of the Borough of Wilkinsburg and of the City of Pittsburgh (City), and the Borough of Wilkinsburg

(Wilkinsburg) (together, Objectors),[1] and dismissed Appellants' Petition to Initiate Annexation (Annexation Petition) filed under the 1903 Annexation Law (1903 Annexation Law).[2] At issue is the validity of the 1903 Annexation Law, and whether Appellants may seek annexation of Wilkinsburg to the City by way of the 1903 Annexation Law, or whether they must proceed under another method of annexation.

Appellants present three questions for our review. First, we consider whether the 1903 Annexation Law was implicitly repealed in 1970 when the legislature failed to pass a uniform municipal reapportionment law within two years of the adoption of the 1968 Pennsylvania Constitution. The second question is closely related to the first and asks us to review whether the trial court erred by failing to fully consider the effect of the Municipal Consolidation or Merger Act, 53 Pa. C.S. §§731-741,[3] on the 1903 Annexation Law. Third, we consider whether the

---

[1] Three Objectors, Kate Luxemburg, Renee Haynes-Johnson, and Carmen Brown, are participating *pro se*. Ms. Haynes-Johnson filed a brief. Ms. Luxemburg and Ms. Brown did not file briefs and were precluded from participating in oral argument by Order of this Court dated April 20, 2023. In its order, the trial court also granted Objectors' various petitions to intervene, which Appellants did not contest.

[2] Act of April 28, 1903, P.L. 332, *as amended*, *repealed by* the Act of July 7, 2022, P.L. 455, No. 41 (Act 41 of 2022), *formerly* 53 P.S. §§171-176.

[3] The Act of October 13, 1994, P.L. 596, No. 90, consolidated at 53 Pa. C.S. §§731-741. The parties sometimes refer to this act as Act 90 of 1994. The Municipal Consolidation or Merger Act governs consolidation (combination of two or more municipalities to create a new municipality) and mergers (combination of two or more municipalities to create one larger, surviving municipality), but only for municipalities other than Pittsburgh and Philadelphia. *See* 53 Pa. C.S. §§731, 732. In general, these sections permit consolidations or mergers between contiguous municipalities by way of joint agreement and enactment of ordinances by each affected municipality, subject to voter approval in each municipality. In the alternative, voters in affected municipalities may seek approval of consolidation or merger through voter initiatives. *See* 53 Pa. C.S. §733. The Municipal Consolidation or Merger Act governs consolidations or mergers for municipalities other than Philadelphia and Pittsburgh, and it does not govern boundary changes or clarifications.

trial court erred by failing to conclude that Act 41 of 2022[4] is unconstitutional when the legislature violated several provisions of article III of the Pennsylvania Constitution, such that Act 41 of 2022 did not repeal the 1903 Annexation Law. After careful review of all three questions, we affirm.

The procedural background was summarized by our Court as follows and is not in dispute.[5]

> On September 29, 2022, Appellants filed an Annexation Petition with the trial court seeking annexation of [] Wilkinsburg into the City [] pursuant to the [] 1903 Annexation Law. At the September 29, 2022 presentment of the [Annexation] Petition, Appellants alerted the trial court to [] Act 41 of 2022, which purported to repeal the 1903 Annexation Law. However, Appellants also claimed that Act 41 [of 2022] violated article III (Legislation) of the Pennsylvania Constitution, Pa. Const. art. III, and was therefore ineffective.
>
> Thereafter, several [O]bjectors appeared at the scheduled hearing and argued that the 1903 Annexation Law had been implicitly rendered unconstitutional following the Constitutional Amendments of 1968 (effective 1970), when the Legislature did not enact uniform legislation regarding annexation procedures by April 23, 1970.

---

[4] The Act of July 7, 2022, P.L. 455, No. 41, which became effective on September 6, 2022, and is consolidated at 53 Pa. C.S. §§711-729, governs boundary changes and boundary clarifications for all municipalities, regardless of size. In general, these sections permit boundary changes or clarifications between abutting municipalities by way of ordinances enacted by each affected municipality, subject to objection by petition, and approval by referendum. In the alternative, affected municipalities may seek judicial approval of a boundary change or clarification by way of judicial ascertainment. *See* 53 Pa. C.S. §§715, 716. Although Act 41 of 2022 applies to all municipalities, it governs only boundary changes and boundary clarifications, and not consolidations or mergers. *See* 53 Pa. C.S. §§711, 712. Critically, however, Act 41 of 2022 contained an explicit repeal of the 1903 Annexation Law that Appellants argue is invalid because of the way the legislature adopted this act. *See* Reproduced Record (R.R.) at 460a.

[5] Our Court considered and denied Appellants' Application for Expedited Consideration in a Memorandum Opinion filed on January 31, 2023.

3

*Appeal of Evans* (Pa. Cmwlth., No. 1376 C.D. 2022, filed January 31, 2023), slip op. at 2.

After a full hearing that focused on the parties' legal arguments, the trial court granted Objectors' intervention, granted Objectors' objections, and dismissed Appellants' Annexation Petition. Trial Court 12/9/22 Opinion at 2. The trial court concluded, and the parties did not contest, that Appellants' Annexation Petition contained the required number of signatures under the 1903 Annexation Law.[6]

The trial court then reviewed the parties' legal arguments and concluded that the 1903 Annexation Law "has been effectively repealed by the Constitutional Amendments of 1968, effective 1970. Article IX, [s]ection 8 of the Pennsylvania Constitution[7] required the legislature to enact uniform legislation

---

[6] Section 1 of the 1903 Annexation Law, *formerly*, 53 P.S. §171, provided that any municipality seeking to become annexed to a contiguous city must present a petition signed by at least five percent of the qualified voters in the last preceding general election in *that* municipality. *See* R.R. at 470a. Section 2 of the 1903 Annexation Law, *formerly*, 53 P.S. §172, provided that the city to which the proposed annexation is made must consent or disapprove of the annexation by vote of the city council. *See* R.R. at 471a.

[7] Pa. Const. art. IX, §8. Article IX, section 8, provides:

> **Uniform Legislation.**—The General Assembly shall, within two years following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of boundaries of municipalities.
>
> **Initiative.**—The electors of any municipality shall have the right, by initiative and referendum, to consolidate, merge and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.

**(Footnote continued on next page…)**

4

establishing the procedure for consolidation, merger or change of the boundaries of municipalities." Trial Court Opinion at 2. The trial court relied on *Derry Township Supervisors v. Borough of Hummelstown*, 326 A.2d 342, 344 (Pa. 1974) (*Hummelstown*), quoting verbatim as follows. "'Since the [l]egislature did not enact uniform legislation regarding annexation procedures by April 23, 1970, all annexation after that date must be by initiative, as set forth in [a]rticle IX, [s]ection 8.'" Trial Court Opinion at 2-3.

The trial court then confirmed the standard for reviewing the constitutionality of a statute, which requires courts to presume that the statute is constitutional unless it "clearly, palpably, and plainly violates constitutional rights,"

---

> **Study.**—The General Assembly shall designate an agency of the Commonwealth to study consolidation, merger and boundary changes, advise municipalities on all problems that might be connected therewith, and initiate local referendum.
>
> **Legislative Power.**—Nothing herein shall prohibit or prevent the General Assembly from providing additional methods for consolidation, merger or change of boundaries.

In turn, article IX, section 14, defines "Initiative" as:

> **"Initiative"** means the filing with the applicable election officials at least ninety days prior to the next primary or general election of a petition containing a proposal for referendum signed by electors comprising five percent of the number of electors voting for the office of Governor in the last gubernatorial election in each municipality or area affected. The applicable election official shall place the proposal on the ballot in a manner fairly representing the content of the petition for decision by referendum at said election. Initiative on a similar question shall not be submitted more often than once in five years. No enabling law shall be required for initiative.

Pa. Const. art. IX, §14.

5

citing *Estate of Fridenberg v. Commonwealth*, 33 A.3d 581, 591 (Pa. 2011). Trial Court Opinion at 3. The trial court then concluded that because the Municipal Consolidation or Merger Act "expressly excludes the City of Pittsburgh, the only procedure for annexation is set forth in [a]rticle IX[,] [s]ection 8. Therefore, the [Annexation Petition] under the 1903 [Annexation Law] was dismissed." Trial Court Opinion at 3.

The parties agree that the first issue is governed by *Hummelstown*, but they disagree on how it should be applied. In *Hummelstown*, our Supreme Court considered whether three boroughs could seek annexation of three neighboring townships under The Borough Code, 8 Pa. C.S. §§101-3501. The boroughs filed their annexation petitions sometime after April 23, 1970, the two-year deadline mandated by article IX, section 8. *Hummelstown*, 326 A.2d at 343. The Court noted that article IX, section 14 of the Pennsylvania Constitution provided for article IX, section 8 to take effect two years after the effective date of the constitution, or on the effective date of legislation adopted on the issue, whichever occurred first. *Id.* at 344. The Court concluded that no legislation governing annexation had been approved up to that point, so that the annexation procedures in article IX, section 8 governed. Again, the Court held that "[s]ince the [l]egislature did not enact uniform legislation regarding annexation procedures by April 23, 1970, *all annexation* after that date must be by initiative, as set forth in [a]rticle IX, section 8." *Id.* at 344 (emphasis added).

As to the first issue, Appellants argue that the Court in *Hummelstown*, decided in 1974, did not have the benefit of the Municipal Consolidation or Merger Act, enacted in 1994, which they contend necessarily restricts its application. Appellants argue that because the Municipal Consolidation or Merger Act does not

6

govern consolidations or mergers for Philadelphia and Pittsburgh, and did not explicitly repeal the 1903 Annexation Law, that the 1903 Annexation Law remains in effect for the City's annexation of Wilkinsburg. Appellants urge us to consider the dissent in *Hummelstown*, that warned taking the majority's holding to its logical conclusion would produce the absurd result that the legislature would be prohibited from enacting any consolidation, merger, or boundary dispute legislation when it failed to do so by 1970. *Hummelstown*, 326 A.2d at 344. Objectors respond that *Hummelstown* remains good law and has been approved by the Court numerous times, most recently in *Adams Township v. Richland Township*, 154 A.3d 250 (Pa. 2017). Objectors argue that the plain language in *Hummelstown* applies to *all annexations*, and that the quoted statement is part of the Court's holding and not *dicta* as Appellants argue.

Appellants' second issue is closely related to the first issue, and a discussion of the Supreme Court's decision in *Adams Township* is relevant here. In *Adams Township*, the Supreme Court considered whether the doctrine of acquiescence may be applied to resolve a municipal boundary dispute when the location of the municipal boundary is uncertain. *Adams Township*, 154 A.3d at 253. Although *Adams Township* addressed a boundary dispute, not a consolidation or merger, the Court reviewed the constitutional and statutory background "that underlies the legal issues surrounding municipal boundaries." *Id.* at 259. The Court reviewed article IX, section 8, and noted:

> Although this provision imposed a mandate upon the General Assembly to enact uniform legislation regarding, *inter alia*, changes of municipal boundaries, the General Assembly failed to enact the required legislation within the constitutionally-mandated two-year period.[12] However, [a]rticle IX, [s]ection 8 specifies that, regardless of the contemplated statutory procedures, boundary

7

changes may be effectuated by "initiative and referendum" and "a majority vote of those voting thereon in each municipality." []

> FN 12.   In 1994 the General Assembly enacted the Municipal Consolidation or Merger Act[].  Although enacted over twenty years beyond the constitutional deadline, the legislation partially complied with [a]rticle IX, [s]ection 8 by establishing procedures for consolidation and merger of municipalities.  However, the statutory scheme does not provide for *changes* to boundaries between municipalities that are not undergoing consolidation or merger, and therefore offers no guidance in the instant case.

*Adams Township*, 154 A.3d at 259 (emphasis in original).

The Supreme Court applied this reasoning to the boundary change dispute before it and recognized that the Municipal Consolidation or Merger Act did not apply.  "Accordingly, pursuant to [a]rticle IX, [s]ection 8, and in the absence of a legislative enactment to the contrary, such boundary changes [(boundary disputes, not boundary changes due to consolidation or merger)] must be accomplished through initiative and referendum." *Adams Township*, 154 A.3d at 260.

As to the second issue, Appellants argue that, despite the delay in passing the Municipal Consolidation or Merger Act, courts have accepted it as valid legislation governing municipal consolidations and mergers.  Appellants argue that the passage of the Municipal Consolidation or Merger Act in 1994 resolved some of the issues expressed in *Hummelstown*, but not those affecting Philadelphia and Pittsburgh.  Appellants argue that the legislature's omission of Philadelphia and Pittsburgh from this act should be interpreted as its desire to treat annexation of a smaller municipality by Philadelphia or Pittsburgh differently, because of the unique factors present in these types of annexations.  Objectors respond that article IX,

section 8 applies to the proposed annexation of Wilkinsburg to the City, as governed by *Hummelstown* and *Adams Township*. Objectors respond that the Court's article IX, section 8 reasoning in *Adams Township* applies to boundary changes through consolidation or merger.

As to the third issue, the parties do not dispute that Act 41 of 2022 formally repealed the 1903 Annexation Law by name.[8] The parties also agree that Act 41 of 2022 became effective on September 6, 2022, and that Appellants' Annexation Petition was filed on September 29, 2022, after the effective date of Act 41 of 2022. The parties disagree about whether Act 41 of 2022, and its repeal of the 1903 Annexation Law, is constitutional under article III of the Pennsylvania Constitution.

Article III of the Pennsylvania Constitution governs the manner in which the legislature must enact legislation. In relevant part, article III, section 4 requires that "[e]very bill shall be considered on three different days in each House." Pa. Const. art. III, §4. Article III, section 6 requires that "[n]o law shall be revived,

---

[8] Section 4. Repeals are as follows:

(1) The General Assembly declares that repeals under Paragraph (2) are necessary to effectuate the addition of 53 Pa. C.S. Ch. 7 Subch. B.

(2) The following acts and parts of acts are repealed:

(I)     The Act of April 28, 1903 (P.L. 332, No. 260), entitled "An act for annexation of any city, borough, township, or part of a township, to a contiguous city, and providing for the indebtedness of the same."

*See* R.R. at 460a, and *former* 1903 Annexation Law, 53 P.S. §§171-176, listed as repealed by Act 41 of 2022.

9

amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." Pa. Const. art. III, §6.[9] Article III, sections 4 and 6, were considered at length by our Supreme Court in *Pennsylvania Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005) (*PAGE*). In *PAGE* the Court considered whether the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa. C.S. §§1101-11, was unconstitutional as passed in violation of article III, sections 1, 3, 4, 6, and 10, and an unconstitutional delegation of power to the Pennsylvania Gaming Control Board. *Id.* at 392. Relevant here, the Court concluded that the Gaming Act's original purpose, subject, and title did not violate article III, sections 1 and 3, when the original bill related to criminal background checks for horse racing licensees, and the amended bills and Gaming Act more broadly regulated the gaming industry. *Id.* at 404, 406, and 409-10.

The general purpose of article III is to prevent "stealth legislation" in which some legislators or the public might be misled about the contents of the bill. *Washington v. Department of Public Welfare*, 188 A.3d 1135, 1147 (Pa. 2018). The test to determine whether the original bill and its amendments satisfy article III is "germaneness," which "affords due regard for the necessity of preserving flexibility

---

[9] In addition, article III, section 1 states, in relevant part, that "no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." Pa. Const. art. III, §1. Article III, section 3 states that "[n]o bill shall be passed containing more than one subject, which shall clearly be expressed in its title, except in a general appropriation bill or a bill codifying or compiling the law or a part thereof." Pa. Const. art. III, §3. Although Appellants do not argue that Act 41 of 2022 violated the original purpose rule in article III, section 1, or the single-subject rule or clear title rule in article III, section 3, these issues are often intertwined with those raised under article III, section 4 on the question of whether an amended bill is "germane" to the earlier version of the bill.

10

in the legislative crafting process, while maintaining the strength of the safeguards for the regularity and transparency of this process afforded by [a]rticle III, [s]ection 4." *Id.* at 1151.

> Amendments are germane to the original general subject matter of a bill if both the subject of the amendments and the subject of the original contents of the bill "have a nexus to a common purpose." [] In other words, the subject of the amendments and the subject of the original bill language must constitute "a unifying scheme to accomplish a single purpose." In making this determination, a reviewing court may hypothesize a "reasonably broad" unifying subject; however, such a hypothetical subject cannot be unduly expansive, lest the purpose of the constitutional provision be defeated.

*Id.* at 1151-52 (internal citations omitted).

Further, although article III, section 4 does not require that a new three-day consideration begin on every amendment, "only when amendments are germane to the bill's original purpose will consideration of the original bill by each House on a particular day count towards the requirements of [a]rticle III, [s]ection 4." *Washington*, 188 A.3d at 1151. Critically, in *Washington*, the amendment in question entirely removed the title and contents of the original bill, leaving it, "in every respect, a nullity." *Id.* at 1150. Consequently, the Court held that the public welfare bill at issue was unconstitutional under article III, section 4, because the amendments to an empty bill could not be considered germane. *Id.* at 1154.

The parties agree that Act 41 of 2022 began as Senate Bill (SB) 477, where it addressed municipal requirements to update county assessment offices with building and demolition permits. After passing the Senate, the House amended SB 477 to add the municipal boundary change provisions and the repeal of the 1903 Annexation Law. The Senate had already considered the earlier version of SB 477

one time, and it considered the amended SB 477 two more times, passing it on the third consideration. *See* R.R. at 409a-92a. Appellants argue that Act 41 of 2022 violates article III, section 4, because the amendment was not germane to the original bill, and, therefore, the Senate failed to consider the bill three times. Objectors first respond that Appellants waived their article III, section 4 claim when they failed to include "section 4" in their original filing.[10] If not waived, Objectors further respond that the amendment to SB 477 was germane to the original bill, and thus satisfied three considerations in the Senate, because municipal boundary changes are clearly related to, and share a common purpose with, accuracy in county tax assessments.

As to the repealer provision, Appellants argue that Act 41 of 2022 is unconstitutional and violates article III, section 6, because the act failed to provide the full text of the 1903 Annexation Law being repealed. One of the purposes of article III, section 6 along with other provisions of article III

> "was to provide full notice and publicity to all proposed legislative enactments, and thus to prevent the passage of 'sneak' legislation." [] "The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply."

*PAGE*, 877 A.2d at 411 (quoting *L.J.W. Realty Corp. v. Philadelphia*, 134 A.2d 878, 882 (Pa. 1957)). The Court held that

---

[10] In the Annexation Petition, Appellants averred that Act 41 of 2022 violated article III, section 6, and did not include article III, section 4. R.R. at 4a-16a. However, Appellants raised their specific article III, section 4 challenge at the hearing before the trial court and in their motion for reconsideration, and Objectors had the opportunity to respond. R.R. at 362a-91a; 531a-44a. Because article III claims are intertwined and focus on germaneness, and Appellants raised both sections at the hearing and in their appeal to this Court, we find that Appellants did not waive their article III, section 4 claim.

> [a]rticle III, [s]ection 6 requires, with regard to a directed, specific repealer, the effectuation of which is not otherwise apparent from the associated bill, that as much of the law that is expressly repealed by the bill must be published at length. In this way, legislators may see the elimination of particular existing legislative provisions from the face of a pending bill, without having to refer to the existing piece of legislation for comparison.

*Id.* at 412.

In *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1226 (Pa. Cmwlth. 2018), our Court provided factors to consider in determining whether publishing the full text is required, specifically, whether a provision is being directly repealed or is more in the nature of a holiday or temporary inconsistency, and whether it is alleged that legislators were misled by the absence of the entire text of the prior law. Under these standards, Appellants argue that the repeal of the 1903 Annexation Law was a specific repealer, the effect of which was not apparent from the face of Act 41 of 2022. Objectors respond that publication of the full text was not required because the repealer included the full, accurate description of the 1903 Annexation Law, and there was no confusion as to the effect of the repealer, and no allegations that legislators were misled. Objectors note that Act 41 of 2022 was an uncontroversial measure, passed overwhelmingly by the legislature, and was not an example of sneak legislation.

As to the first issue, we must reject Appellants' argument that the 1903 Annexation Law remained in effect even though the legislature failed to enact a uniform municipal reapportionment law by 1970. We are bound by the holding of our Supreme Court in *Hummelstown*, 326 A.2d at 344, which requires that, in the absence of legislation, article IX, section 8 governs the City's annexation of Wilkinsburg. The Supreme Court's direction that "all annexation" be governed by

13

article IX, section 8 is not *dicta*, and is essential to the holding. *Id.* We further note that courts have approved *Hummelstown* as recently as 2017 in *Adams Township*, when the Supreme Court explained that it affirmed *Middle Paxton Township v. Borough of Dauphin*, 308 A.2d 208 (Pa. Cmwlth. 1973), in *Hummelstown*, and "agreed with the Commonwealth Court's calculation of the constitutional deadline and the consequence of the General Assembly's failure to meet it." *Adams Township*, 154 A.3d at 260. An opinion decided by a majority of our Supreme Court "becomes binding precedent on the courts of this Commonwealth. " *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996). The majority opinion of the Supreme Court "is binding not only on the parties before us, under the doctrine of law of the case,[] but is precedent as to different parties in cases involving substantially similar facts, pursuant to the rule of *stare decisis*.[]" *Id.* at 903 (footnotes omitted).

As to the second issue, we reject Appellants' argument that the enactment of the Municipal Consolidation or Merger Act should be interpreted as an expression of the legislature's desire to treat annexation of a smaller municipality by Philadelphia or Pittsburgh differently. Instead, we must be guided by the Supreme Court's decision in *Adams Township*, which held that, in the absence of legislation to replace the former Borough Code governing boundary changes resulting from boundary disputes, such boundary changes are governed by article IX, section 8. *Adams Township*, 154 A.3d at 260. The Court's reasoning is equally applicable here, where the boundary change sought is a result of an annexation, now defined as a merger. Because the legislature has not enacted legislation governing mergers or consolidations with Philadelphia and Pittsburgh, such mergers or consolidations are governed by article IX, section 8 of the Pennsylvania Constitution.

The trial court did not directly address the third issue, regarding the constitutionality of Act 41 of 2022. We conclude that the passage of Act 41 of 2022 did not violate article III, section 4, or section 6, because the amendment was germane to the original bill. Unlike *Washington*, the amendments to SB 477 shared a nexus with the original bill when both related to the common purpose of accuracy in county assessments. *Washington*, 188 A.3d at 1151-52. Therefore, we conclude that the Senate considered SB 477 three times, and that its passage did not violate article III, section 4. We also reject Appellants' argument as to their article III, section 6 claim. The full description of the 1903 Annexation Law was included in the repeal, there were no allegations that legislators were misled, and there was no evidence of stealth legislation. *See PAGE*, *Phantom Fireworks*.

Because we hold that Act 41 of 2022 was enacted in conformity with article III and is not unconstitutional, any doubt as to the status of the 1903 Annexation Law has been removed. The specific repeal of the 1903 Annexation Law within Act 41 of 2022 became effective before Appellants filed their Annexation Petition. As such, Appellants may not utilize the procedures outlined in the 1903 Annexation Law, and they are required to utilize the initiative and referendum procedure in article IX, sections 8 and 14, unless legislation is enacted that offers another procedure for consolidations or mergers with Philadelphia and Pittsburgh. Finally, because we conclude that the 1903 Annexation Law is invalid, we need not reach Objectors' argument that the 1903 Annexation Law is unconstitutional under the free elections clause in article I, section 5 of the Pennsylvania Constitution, Pa. Const. art. I, §5.

Accordingly, and for the foregoing reasons, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge


Judge McCullough did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Proposed Annexation of : 
Wilkinsburg by the City of Pittsburgh : 
 : 
Petition of: Tracey Evans, Monica Garcia, : 
Debra Raubenstrauch, Vanessa Buffry : 
and Michael Rose : 
 : No. 1376 C.D. 2022
Intervenor Objectors: Carmen Brown, : 
Renee Haynes-Johnson, Borough of : 
Wilkinsburg, Moira Kaleida, Angel : 
Gober, Susan Oerkvitz, Pamela Harbin and : 
Evan Gascoine : 
 : 
Appeal of: Tracey Evans, Monica Garcia, : 
Debra Raubenstrauch, Vanessa Buffry : 
and Michael Rose : 

# **O R D E R**

AND NOW, this 13<u>th</u> day of <u>July</u>, 2023, the order of the Allegheny County Court of Common Pleas dated October 28, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge